STEPHEN S. SCIUTO, JR., & another[1] *vs.* CITY OF LAWRENCE
& others.[2]

Essex. February 7, 1983. — August 17, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Municipal Corporations*, Police, Officers and employees, Ordinances and
by-laws. *Constitutional Law*, Separation of powers. *Conflict of
Interest. Practice, Civil*, Standing. *Words*, "Nepotism."

A city ordinance transferring to the city council from the director of pub-
lic safety the authority to appoint the city's chief of police did not of-
fend the separation of powers principle of art. 30 of the Massachusetts
Declaration of Rights. [943-944]

A city ordinance transferring to the city council from the director of pub-
lic safety the authority to appoint the city's chief of police did not, on
its face, offend art. 10 of the Massachusetts Declaration of Rights by
conferring a benefit on one person at the expense of another. [944]

Two city police captains, who, with a junior captain who was appointed
chief of police of the city, were the only persons on a civil service list
eligible for the chief's position, were not precluded from challenging
on the ground of nepotism the legality of the chief's earlier promotions
to lieutenant and captain, where, at the time of these promotions, the
two captains had not been entitled to relief as "persons aggrieved"
under G. L. c. 31, § 2B, and where, in the circumstances, they were
not guilty of laches in failing to challenge those promotions earlier.
[944-945]

Two city police captains who, with a junior captain who was appointed
chief of police of the city, were the only persons on a civil service list
eligible for the chief's position, had standing to maintain an action
based upon G. L. c. 268A, § 19, alleging a conflict of interest and
challenging the appointment of the chief on the ground that the chief's
prior appointments as lieutenant and captain, at least one of which
was prerequisite under c. 31, § 59, to taking the civil service exami-
nation for chief of police, were made by the chief's brother, himself an
alderman and the city's director of public safety. [946-947]

---

[1] Joseph Tylus.

[2] The five members of the Lawrence city council, consisting of the
mayor and four aldermen, and Patrick Schiavone.

A majority of the court were of the view that, as matter of law, violations of G. L. c. 268A, § 21 (*a*), by a city's director of public safety, in successively promoting his brother to the ranks of lieutenant and captain in the city's police force, "substantially influenced" the later action of the city council in selecting the brother from a group of three persons on a civil service list as chief of police. [947-949]

CIVIL ACTION commenced in the Superior Court Department on August 22, 1980.

Questions of law were reported by *Bennett*, J., to the Appeals Court. The Supreme Judicial Court ordered direct review on its own initiative.

*John A. Macoul* for the plaintiffs.

*Edward J. Grimley, Jr.*, City Solicitor, for the city of Lawrence & others.

*Anthony J. Randazzo, Jr.*, for Patrick Schiavone.

WILKINS, J. The plaintiffs seek rescission of the appointment of the defendant Patrick Schiavone to the position of police chief of the city of Lawrence. At the time of his appointment by vote of the Lawrence city council, Patrick Schiavone and the plaintiffs were captains in the Lawrence police department and the only persons on the civil service list eligible for appointment to chief. Also at that time, as had been the case for several years, Patrick Schiavone's brother Terrance was the director of public safety, and, as an alderman, a member of the Lawrence city council. The plaintiffs' principal challenges to Patrick Schiavone's appointment are founded, directly or indirectly, on the fraternal relationship of Patrick and Terrance Schiavone.

A judge of the Superior Court reserved decision and reported the case to the Appeals Court on a statement of agreed facts, constituting a case stated. The report stated that certain questions, set forth in the margin,[3] were pre-

---

[3] The questions are:

"1. Whether the promotions of the defendant, Patrick Schiavone, first to Lieutenant and later to Captain by his brother, the defendant, Terrance Schiavone, the then appointing authority, were in violation of General Laws Chapter 268A, Section 19.

"2. Whether the plaintiffs are precluded from seeking judicial review by reason of their failure to exhaust the remedy provided in General Laws

sented for determination. We transferred the case here on our own motion.

As an initial matter it is important to state what we regard as before us. We believe that the judge and the parties intended to present for our determination only the questions that are set forth in the judge's reservation and report. It is true that the parties agreed to an "Agreed Statement of Facts Constituting a Case Stated" and thus might be regarded as having presented the entire matter for determination on the agreed record. However, the apparent purpose of the agreement as to facts was only to present facts bearing on the stated questions. The reservation and report says: "The following questions are presented for determination" and "[t]his report contains all the evidence material to the questions reported." The parties have argued these questions and no other issues. Therefore, we shall only answer the questions presented. We conclude that the plaintiffs have standing to raise the question of the lawfulness of Patrick Schiavone's appointment, that Alderman Schiavone violated the conflict of interest law when he appointed his brother to the positions of lieutenant and captain in the police force, and that the ordinance pursuant to which Patrick Schiavone was appointed chief of police is lawful.

Chapter 31, Section 2B, as persons aggrieved by the decision of the Civil Service Administration in approving the appointment of the defendant, Patrick Schiavone to Lieutenant, Captain and Chief of Police.

"3. Whether the plaintiffs' failure to sooner challenge the appointment of the defendant, Patrick Schiavone, to Lieutenant and later to Captain, by his brother, the defendant, Terrance Schiavone, constituted laches so as to bar this action.

"4. Whether the plaintiffs had standing to challenge the appointment of the defendant, Patrick Schiavone to Lieutenant and Captain.

"5. Whether the appointment of Patrick Schiavone to Chief of Police by the City Council had retroactive effect so as to give standing to the plaintiffs as parties in interest to challenge the appointment to Lieutenant and Captain if they had none at the time those appointments were made.

"6. Whether the amendment adopted by the City Council designating itself as the appointing authority for the Chief of Police was a valid exercise of authority granted to it by statute and the Charter and revised ordinances of the City of Lawrence."

The two plaintiffs moved up through various ranks in the Lawrence police department to become captains. Tylus became a captain in 1970; Sciuto became a captain in August, 1971. The defendant Patrick Schiavone became a permanent police officer in 1966. In December, 1971, he was appointed a sergeant. Alderman Schiavone, as director of public safety, appointed his brother Patrick to the position of lieutenant in December, 1977, and to the position of captain in November, 1978. In each instance, Patrick Schiavone's name appeared on a list certified by the personnel administrator of the Civil Service Commission (commission). In December, 1976, before either appointment, the then city solicitor gave a requested opinion to Alderman Schiavone that, if his brother were to pass a civil service examination and were to be certified by the commission, Alderman Schiavone could lawfully appoint his brother to a higher position in the police department, although such an appointment could be considered a violation of the standards of conduct set forth in G. L. c. 268A, § 23, "for which there is no statutory provision for disciplinary action." Patrick Schiavone's impressive rise in rank from sergeant to lieutenant to captain followed in the next two years.

In 1980, the position of chief of police became open, and the personnel administrator of the commission certified Tylus, Sciuto, and Patrick Schiavone as eligible for appointment.[4] The plaintiffs did not challenge Patrick Schiavone's eligibility to take the examination at or before the time he took it. After Patrick Schiavone's name appeared on the civil service list, Alderman Schiavone requested an opinion from the city solicitor, not the one who gave the earlier opinion, whether he could properly appoint his brother to the position of chief. The city solicitor advised that the appointment "might be improper." On August 14, 1980, on the suggestion of Alderman Schiavone, but without his further participation, the Lawrence city council, acting

---

[4] The civil service examination grades for the three were: Tylus — 88; Sciuto — 77; and Patrick Schiavone — 73.

through the unanimous vote of its other four members, amended the revised ordinances of the city to provide that the city council, and not the director of public safety, would appoint the chief of police.

On August 22, 1980, the plaintiffs commenced this action challenging past promotions of Patrick Schiavone as violations of the conflict of interest law (G. L. c. 268A, § 19), arguing that his appointment as chief would be unlawful, and contending that the August 14, 1980, amendment of the city's ordinances was invalid. On August 29, 1980, a judge of the Superior Court denied the plaintiffs a preliminary injunction. On September 2, 1980, the city council, in the absence of Alderman Schiavone, voted to appoint Patrick Schiavone to the position of chief of police.[5]

1. The August 14, 1980, amendment of the revised ordinances, providing for the appointment of the chief of police by the city council, is lawful. The September 2, 1980, city council vote appointing Patrick Schiavone to the position of chief of police was consistent with the provisions of the amended ordinance. Alderman Schiavone did not participate in these votes. The fact that he suggested that the city ordinance be amended does not present grounds to invalidate the amendment.[6]

A provision in a city ordinance giving the city council authority to appoint the chief of police does not offend the separation of powers principles of art. 30 of the Declaration of Rights of the Constitution of the Commonwealth. It is

---

[5] The case has since taken a leisurely course. The judge reported the case to the Appeals Court on October 22, 1981, and the record was assembled in November, 1981. No party filed an application for direct appellate review in this court. We transferred the case here in December, 1982, and heard oral argument in February of this year.

[6] Even if Alderman Schiavone's action in suggesting the amendment of the ordinance so that the city council could appoint his brother chief of police violated the conflict of interest law, a point the plaintiffs raise only as a possibility, the record does not show that such a violation, if it was one, "substantially influenced" the action taken by the city council in amending the ordinance so as to justify invalidation of the ordinance under G. L. c. 268A, § 21 (a).

true that the appointment of a particular person to an office is traditionally the function of the executive department. See *Commissioner of Admin.* v. *Kelley,* 350 Mass. 501, 505 (1966). We are aware of no case, however, in which separation of powers principles have been applied in this Commonwealth to invalidate the allocation of power to a city council, or similar body, to appoint a municipal officer. The plaintiffs' art. 30 challenge to the ordinance, if accepted, would call into question the entire form of government in effect in Lawrence, where the city council appoints various city officials (including the city clerk, the city treasurer, and the city solicitor [see St. 1955, c. 98, § 2]) and where each alderman serves as the director and administrative head of a branch of the city government.

We find no merit in the plaintiffs' further contention that the difference in the process by which the chief of police is appointed (by the city council) from the process by which many other municipal officers are appointed (by city councillor-department heads) violates art. 10 of the Declaration of Rights. On its face, the amended ordinance does not single out any person for special privileges or advantages at the expense of the rights of another. See *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.,* 366 Mass. 734, 741-744 (1975).

2. The plaintiffs' basic contention is that, assuming the amended ordinance is valid, Patrick Schiavone was not entitled to appointment to the position of chief of police because his earlier appointments to the positions of lieutenant and captain were made by his brother in violation of G. L. c. 268A. Under G. L. c. 31, § 59, Patrick Schiavone would have been eligible to take the civil service examination for chief only if at least one, and perhaps both, of these appointments had been made.[7] The plaintiffs argue that

---

[7] General Laws c. 31, § 59, concerns who may take an examination, generally permitting only those in the next lower title in the force to take an examination for a promotional appointment, except where, because of a shortage of applicants for the examination, persons in still lower titles are permitted to participate.

Patrick Schiavone was not entitled to be considered for appointment to chief because those earlier appointments, which were essential to his eligibility for appointment to chief, were made in violation of G. L. c. 268A.

The defendants argue that we need not reach these issues for a variety of reasons. They contend that the plaintiffs have raised their challenges to the earlier appointments too late, that the action is barred by laches, and that they failed to take seasonable appeals under G. L. c. 31, § 2 (b), to the commission when Patrick Schiavone's name appeared on earlier civil service lists for appointment to lieutenant and to captain. The plaintiffs were already captains when the earlier appointments were made. Thus, they would not have then been "persons aggrieved" who are entitled under G. L. c. 31, § 2 (b), to appeal to the commission from the personnel administrator's inclusion of Patrick Schiavone's name on the list of candidates. For the same general reasons, we see no basis for concluding that the plaintiffs were guilty of laches. They were not adversely affected by the earlier appointments at the time they were made, and their delay in making any challenge was not unreasonable.

The defendants also contend that the plaintiffs should have appealed to the commission under G. L. c. 31, § 2 (b), when Patrick Schiavone's name appeared with theirs on the civil service list for appointment as chief of police. We think the commission had no role to play either in deciding whether the appointment of Patrick Schiavone might violate the conflict of interest law or in concluding that, for this reason, his name should not appear on a civil service eligibility list.[8]

---

[8] Amendments to G. L. c. 31, § 2 (b), by St. 1981, c. 767, § 11, explicitly make this conclusion correct as to matters arising after the effective date of the 1981 act.

We note on the question of exhaustion of administrative remedies that G. L. c. 268A, § 21 (a), provides that "[i]n addition to any other remedies provided by law," a violation of certain sections of G. L. c. 268A may be grounds for rescinding or cancelling action taken where such a violation has substantially influenced that action.

The plaintiffs had standing to maintain an action challenging the appointment of Patrick Schiavone to the position of chief of police. In *Graham* v. *McGrail,* 370 Mass. 133, 136-137 (1976), we upheld the right of a school committee member to obtain prospective declaratory relief, concerning the propriety of certain action under G. L. c. 268A, when other school committee members who had children employed in the school system participated in various budget decisions. We noted, but did not have to decide, the question whether a member of a school committee could invoke the civil remedies of rescission and restitution of G. L. c. 268A, § 21 (*a*), as to certain actions of the school committee. *Id.* at 134. Earlier, we had held that in particular circumstances a private citizen could invoke the recission remedy of § 21 (*a*). *Everett Town Taxi, Inc.* v. *Aldermen of Everett,* 366 Mass. 534, 535 (1974). We noted in that case that the conflict of interest law had been "enacted as part of 'comprehensive legislation . . . [to] strike at corruption in public office, inequality of treatment of citizens and the use of public office for private gain.' Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650, [at] 18." *Id.* at 536. We said further that "[i]n light of these objectives it is apparent that, if a right of action is denied to all private parties, there would be a frustration of the statute," and noted that, if only municipal officials could act under § 21 (*a*), there would be no action at all if those officials were the principal parties in interest. *Id.* We concluded that competitors of corporations allegedly benefited by violations of the conflict of interest law could maintain an action under § 21 (*a*), if they were engaged in a regulated industry and were challenging governmental action threatening their competitive position. *Id.* at 538-539.[9]

---

[9] We also noted the difference between § 21 (*a*) and legislation proposed elsewhere, which was considered during the drafting of our conflict of interest law, that limited the right to seek rescission to specified public officials. *Id.* at 537. We concluded by stating that "it may well be that parties such as the plaintiffs have the greatest incentive to uncover conflicts of interest and bring suit under § 21 (*a*) to enforce the statute." *Id.* at 539.

The principles that underlay our decision to grant standing to the plaintiffs in the *Everett Town Taxi* case support the grant of standing to the plaintiffs here. They and Patrick Schiavone were the only persons presented on the civil service list for appointment to the position of chief of police. They were eligible competitors for the appointment to the position. No public official or anyone else was likely to challenge the appointment of Patrick Schiavone because the interested public officials favored the appointment and no one else had as direct an interest in the matter as did the plaintiffs. See *Charbonnier* v. *Amico*, 367 Mass. 146, 151 n.10 (1975) (residency alone does not confer standing under § 21 [*a*]). The objectives of the conflict of interest law would be considerably frustrated if we were to deny standing to the plaintiffs in this case.

Because we reject the defendants' various challenges to the plaintiffs' right to seek rescission of the appointment of Patrick Schiavone to the position of chief of police, we must answer the further question whether the earlier appointments were unlawful.

3. Alderman Schiavone's appointments of his brother to the positions of lieutenant and captain in the Lawrence police force were violations of the conflict of interest law. In *Graham* v. *McGrail*, 370 Mass. 133 (1976), we concluded that a school committee member who participates in decisions when his child's compensation as a school employee is directly and immediately concerned violates the provisions of G. L. c. 268A, § 19 (*a*). Such a school committee member is, we said, "a municipal employee who participates as such an employee in a particular matter in which to his knowledge . . . his immediate family . . . has a financial interest." *Id.* at 137. "Immediate family" includes a child or brother of an employee. G. L. c. 268A, § 1 (*e*). Participation includes participating personally and substantially as a municipal employee through "approval" or "decision" or "otherwise." G. L. c. 268A, § 1 (*j*). "Particular matter" includes an "application," "contract," "decision," and "determination." G. L. c. 268A, § 1 (*k*), as appearing in

St. 1982, c. 612, § 1. Alderman Schiavone is a municipal employee (see *District Attorney for Hampden Dist.* v. *Grucci,* 384 Mass. 525, 528 [1981]) and his appointment of his brother to the positions of lieutenant and captain presumably involved a matter in which his brother had a financial interest.[10]

The defendants argue that "nepotism" is not covered by those sections of the conflict of interest law that contain criminal penalties. They point to a statement in the Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650, at 9, in support of this argument.[11] This statement is difficult to reconcile with the express reference to "immediate family" in § 19 (*a*) (and in other sections of G. L. c. 268A), unless one were to treat the word "nepotism" as necessarily including only more distant relatives than parents, children, and siblings.[12] One member of that commission, later the author of this court's opinion in *Graham* v. *McGrail, supra,* commented that "if the compensation of a member of [a municipal employee's] 'immediate family' is in issue, Section 19 would seem to apply, contrary to the statement of the recess commission that nepotism is excluded from the criminal provisions and covered only by the code of ethics (Section 23)." Braucher, Conflict of In-

---

[10] Although the record does not explicitly so state, we assume that the salary of each successively higher position in the Lawrence police department was greater than the salary in the next lower position. In any event, we think it clear that the positions of police lieutenant and captain were compensated.

[11] The commission said: "It is the Commission's decision not to include in the criminal section related subject matters such as nepotism, campaign contributions, indirect influence and relationships among public officials in different levels of government.

"With respect to nepotism, it is presently considered that the adverse reaction to this by the public will serve as a deterrent, and the matter is covered in the Standards [of Conduct now appearing in G. L. c. 268A, § 23]."

[12] At one time, nepotism may have referred to favoritism to nephews. 7 The Oxford English Dictionary 93 (1933). In common usage today, however, the word concerns all relatives. Webster's Third New Int'l Dictionary, at 1518 (1961).

terest in Massachusetts, in Perspectives of Law, Essays for Austin Wakeman Scott, 25 (1964). This comment anticipated the conclusion that Justice Braucher expressed for this court in the *Graham* case.

4. We answer the six questions as follows: Question one — "Yes." The promotions of Patrick Schiavone to lieutenant and captain made by his brother were made in violation of G. L. c. 268A, § 19. To questions two and three, we answer that the plaintiffs are not precluded from maintaining this action nor barred by laches. We answer questions four and five that the plaintiffs have standing to challenge the appointments of Patrick Schiavone to lieutenant and captain as those appointments bear on the plaintiffs' claim that the appointment to the position of chief of police should be rescinded. In answer to question six, the ordinance adopted by the city council designating it as the appointing authority for the chief of police was a valid exercise of the city council's authority.

5. The remaining issues in this case, apparent from the record, concern the application of G. L. c. 268A, § 21 (*a*), as appearing in St. 1962, c. 779, § 1. Section 21 (*a*) provides that a violation of the conflict of interest law (such as occurred in the promotion of Patrick Schiavone to the positions of lieutenant and captain) "which has substantially influenced" the action taken by the municipal agency (i.e., the city council appointing him chief of police) "shall be grounds for avoiding, rescinding or cancelling the action on such terms as the interest of the municipality and innocent third persons require." A majority of this court believe that, on the record before us, as a matter of law the violations of § 21 (*a*) "substantially influenced" the city council's action in appointing Patrick Schiavone to the position of chief of police. In any event, there are issues to be considered in the Superior Court beyond those submitted on this reservation and report. The case is remanded to the Superior Court for further consideration.

*So ordered.*