JOSEPH PICCUIRRO & another[1] *vs*. WILLIAM C. GAITENBY.

Hampshire.   March 14, 1985. — June 28, 1985.

Present: BROWN, KAPLAN, & DREBEN, JJ.

*Consumer Protection Act*, Unfair act or practice, Broker, Public official, Damages, Demand letter. *Conflict of Interest. Damages*, Consumer protection case.

In a consumer protection case brought by plaintiffs seeking to recover damages resulting from installation of a septic system on an unsuitable parcel of land which the plaintiffs had purchased through the defendant, a real estate broker, the judge was warranted in finding that the defendant had violated G. L. c. 93A by using his position as a member of a municipal board of health to obtain approval for installation of the septic system in violation of certain regulations of the State Environmental Code. [290-291]

In a consumer protection case brought by plaintiffs, seeking to recover damages resulting from installation of a septic system on an unsuitable parcel of land, against the real estate broker who had sold them the land and who, as a member of a municipal board of health, had obtained approval for installation of the system, the plaintiffs' demand letter, phrased in terms of representations rather than conflict of interest, was held sufficient where it was apparent that the injury complained of arose out of the defendant's acting simultaneously as broker and board of health member. [291-292]

In a consumer protection case against a real estate broker that was tried together with a contract action against a builder for improper installation of a septic system, the judge did not err in imposing joint and several liability on the broker and the builder in the amount of $5,000 as compensatory damages and in assessing punitive damages against the broker computed on the whole award. [292-293]

CIVIL ACTION commenced in the Superior Court Department on July 12, 1979.

The case was tried before *John F. Moriarty*, J.

*John H. Fitz-Gibbon* for the defendant.
*Richard M. Howland* for the plaintiffs.

----

[1] Patricia Piccuirro.

DREBEN, J. The defendant real estate broker appeals from a judgment finding him liable under G. L. c. 93A for unfair and deceptive acts. We agree with the reasoning and conclusions of the trial judge.

We set forth the facts found by the judge. The defendant was a member of the board of selectmen of the town of Huntington and, by virtue of that office, a member of the board of health. In that capacity he and the other members of the board were responsible for ensuring compliance with the State Sanitary Code when residences were constructed on undeveloped lots. He had the duty of requiring the performance of a percolation test in accordance with State regulations and of prohibiting new construction on any lot which could not pass the test. Where the percolation test was met, he had the duty to require that septic systems be constructed in accordance with the regulations.

In addition to his civic offices, the defendant was a real estate broker in Huntington. Some time prior to September, 1976, he placed a sign advertising certain building lots for sale. The plaintiffs expressed interest in one of the lots and were informed by the defendant that, prior to purchase, they should have a percolation test performed to ensure that the lot would support an adequate septic system.

When the plaintiffs inquired who could do the test, the defendant gave them two names. One of the persons recommended, Stuart Fiske, performed the test. Fiske was not a registered professional engineer or a registered sanitarian.[2] Neither the defendant nor any member of the board of health was present when the percolation test was performed. This failure, the judge found, was a violation of Environmental

---

[2] Regulation 14.1(b) of the State Environmental Code-Title 5: Minimum Requirements for the Subsurface Disposal of Sanitary Sewage (1975) (hereinafter Environmental Code Regulation) required such test to be performed by "a registered professional engineer, registered sanitarian, or other person who in the opinion of the approving authority, is qualified to perform such tests."

Code Regulation 14.1(b), which provided that "[a]ll percolation tests should be performed in the presence of a representative of the approving authority."[3]

The percolation rate on the lot as determined by Fiske was twenty minutes per inch. Another regulation, Environmental Code Regulation 14.2(f), provided that if the rate was slower than ten minutes per inch, as in the case of the plaintiffs' lot, another soil saturation test, involving an overnight "swelling period," was needed. The judge found that, if a representative of the board of health had been present at the percolation test, compliance with the "swelling period" regulation "presumably would have been required."

In December, 1976, an application for a permit to construct an individual sewage disposal system on the plaintiffs' lot was filed with the board of health. Inexplicably, it was signed neither by the plaintiffs nor by their builder, but by one Schott, another member of the board of health.[4] The application was not accompanied by the plan required by § 2.3 of the Environmental Code Regulations (plan to show location of the sewage disposal facilities, the location of test pits, etc.), and it omitted information called for by the form (i.e., number of bedrooms and whether a garbage grinder would be installed). In addition, the application mistakenly stated that the percolation test showed a rate of fifteen, rather than twenty, minutes per inch. Despite its deficiencies, the defendant approved the application in December; in March, 1977, he issued a permit for the construction of a sewage disposal system.

The plaintiffs completed their purchase of the lot in January, 1977, and in May hired a builder, who began construction some time in July. In the course of digging the foundation in July, and again during construction of a leaching field in Sep-

[3] The defendant urges that the word "should" does not mandate that a member be present and points to a change in the 1977 regulations which substituted the word "shall" for the former "should."

[4] Schott's signature was placed below a statement that the undersigned agrees to install the sewage system in accordance with the State Sanitary Code and agrees not to use the system until a certificate of compliance is issued by the board of health.

tember, the builder became concerned with the imperviousness of the soil and asked the plaintiffs to call the board of health. They called the defendant who, on both occasions, told them not to worry as the lot had passed the percolation test. In October, the defendant issued a certificate of compliance certifying that the system had been installed in accordance with the State Sanitary Code.

The following spring the sewage disposal system failed to work (water bubbled up out of the ground near the leaching field), and the plaintiffs' cellar filled with water to a depth of eight or nine inches. In March, 1981, they moved out; thereafter they entered into an agreement with the bank which had financed the property whereby the bank accepted title in exchange for the forgiveness of the mortgage note.

The plaintiffs brought this action against the defendant[5] and a companion action against the builder. In the companion case, the jury found a breach of contract by the builder by reason of improper installation of the drainage system and also by reason of improper installation of the leaching field.

In finding that a claim under G. L. c. 93A had been established against the defendant, the judge explained: "In this case the defendant engaged in a commercial transaction as a real estate broker, the success of which depended in large measure on favorable action by the municipal board of which he was a member. By use of his official position he was instrumental in obtaining such favorable action to the ultimate detriment of the persons with whom he was dealing (the plaintiffs). That was an 'unfair or deceptive' act, and he should be held responsible for the consequences." The judge cited G. L. c. 268A, § 19, which prohibits, with certain exceptions not applicable here, a municipal employee from participating in any matter in which he has a financial interest.[6] He also found the defendant liable under c. 93A for violation of 14.1(b) of the Environmental Code Regulations.

---

[5] The plaintiffs brought the action against the defendant in three counts: fraud, negligent misrepresentation, and c. 93A claim. the judge directed verdicts for the defendant on the counts other than the c. 93A claim.

[6] That statute, inserted by St. 1962, c. 779, § 1, provides in relevant part: "(*a*) Except as permitted by paragraph (*b*), a municipal employee who

(1) *Violation of c. 93A.* The defendant argues that a conflict of interest, even if a violation of G. L. c. 268A, § 19, does not give rise to a c. 93A claim and that, since the conflict of interest statute is not intended to provide consumers protection in matters of health, safety, or welfare, it does not fall within the ambit of § XV(C)[7] of the Rules and Regulations of the Attorney General (1975).

Apart from any statutory violation, we think the findings that the defendant used his official position to obtain favorable board of health action to the detriment of the plaintiffs in matters in which he had a financial interest describe the kind of dealing which is "unfair or deceptive" under c. 93A, § 2, inserted by St. 1967, c. 813, § 1. The defendant's conduct falls within a "recognized conception of unfairness", is "unethical," and caused "substantial injury" to consumers (plaintiffs). See *PMP Associates, Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975).

We also concur in the judge's conclusion that the defendant's failure to comply with Environmental Code Regulation 14.1 was a violation of c. 93A, § 2, under Rules and Regulations of the Attorney General, § XV(C). See note 7, *supra.* The judge's findings of a violation by the defendant of regulation 14.1(b) is clearly warranted. His reading of the regulation to require the presence of a board of health member at the time of a percolation test is a reasonable construction of the regula-

---

participates as such an employee in a particular matter in which to his knowledge he . . . has a financial interest, shall be punished by a fine of not more than three thousand dollars or by imprisonment for not more than two years, or both."

[7] That regulation, now 940 Code Mass. Regs. § 3.16 (1978), provides in relevant part: "Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of Chapter 93A, Section 2 if: . . . (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection."

tion in view of the use of the term "should."[8] Moreover, even if, as the defendant contends, the regulation does not make the presence of a board member mandatory, the judge's determination that the defendant "contributed in substantial degree to cause the board of health . . . to fail to supervise the performance of the percolation test by Mr. Fiske" is, we think, a sufficient finding that the defendant did not comply with the regulation.

There was also a failure to follow at least two other regulations designed to protect the public health: (1) Environmental Code Regulation 14.2(f), which required an overnight soil saturation test if the percolation rate was slower than ten minutes per inch, and (2) Environmental Code Regulation 2.3, requiring that a plan accompany an application to construct a sewage disposal system.

We find misguided the defendant's additional contention that he is not liable under c. 93A because of his immunity as a public official. See *Dinsky* v. *Framingham*, 386 Mass. 801 (1982). He was also serving his own interest as a real estate broker. See *McDonough* v. *Whalen,* 365 Mass. 506, 515 (1974). It is precisely the misuse of his public authority to effect a private transaction which constitutes the unfair practice in this case.

(2) *Adequacy of the demand letter.* In an extensive demand letter, the plaintiffs set forth many ot the facts previously recounted in this opinion. While the unfair and deceptive actions of the defendant were characterized as representations — e.g., that adequate tests had been conducted, that installation was proper, that suspected defects were inconsequential — the dual functions of the defendant were repeatedly stressed. For example, one paragraph of the letter claimed: "Your overt representations and your failure to disclose material facts while acting as a member of the Board of Health and simultaneously as broker in the sale induced our clients to disregard indications of problem soil on Lot #7, purchase said lot, build a home

---

[8] See note 3 and accompanying text, *supra,* for the language of the regulation and the defendant's contention.

and disposal system. Your acts in that posture were clearly deceptive, unfair, unconscionably oppressive. You were in probable violation of the Sanitary Sewage regulations . . . and in further violation of Chapter 93A, Regulation XV" (ellipsis in original).

That the letter was phrased in terms of representations rather than conflict of interest is not controlling. It should have been apparent to the defendant from the plaintiffs' description that the injury complained of arose out of the defendant's acting simultaneously as broker and board of health member. We think the demand letter reasonably set forth the acts relied on and was sufficient to give the defendant an opportunity to review the facts and the law to see if the requested relief should be granted and to make a reasonable settlement offer so as to limit damages. *York* v. *Sullivan*, 369 Mass. 157, 162 (1975). *Brandt* v. *Olympic Construction, Inc.*, 16 Mass. App. Ct. 913, 915 (1983). Compare *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. 274, 287-289 (1985).

(3) *Damages.* (a) *Compensatory damages.* The judge found that the loss sustained by the plaintiffs as a result of the defendant's unfair and deceptive actions was the cost of repairing or replacing the leaching field. That cost was stipulated to be $5,000. Since the jury in the companion case had also found the builder to be in breach of contract because of improper installation of the leaching field, the judge imposed joint and several liability on the defendant and the builder in the amount of $5,000. The only challenge made by the defendant to the compensatory damages award is that there is no evidence that he contributed in any significant way to the problems the plaintiffs experienced with their septic system. We have no doubt that the judge was justified on this record in concluding otherwise.

(b) *Punitive damages.* The judge also found the defendant's conduct wilful and assessed double damages.[9] The defendant

---

[9] General Laws c. 93A, § 9(3), inserted by St. 1978, c. 690, provides in relevant part: "In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars,

contests the award of punitive damages on the ground that the defendant's actions were not wilful, and also claims that c. 93A requires the judge to separate the damage caused by each wrongdoer.

We find no error in the finding that the defendant's unfair or deceptive actions in his dealings with the plaintiffs were wilful. The defendant knew of his conflict of interest and knew that his financial interest as a broker would be enhanced by favorable action by the board of health. He used his official position to effect such action with resulting injury to the plaintiffs.

The judge was not required to separate the damages caused by the builder and by the defendant in computing punitive damages. In *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853-859 (1983), the court held that defendants who were jointly and severally liable for compensatory damages under G. L. c. 93A could each be held liable for punitive damages computed on the whole award. We think the same principle applies here.

*Judgment affirmed.*

---

whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two."