Alfred D. FISICHELLI, Trustee of Amfis Realty Trust and Salvatore I. Ambra, Trustee of Amfis Realty Trust

v.

The City known as the TOWN OF METHUEN (hereinafter, Town of Methuen) c/o Solicitor, Maurice J. Lariviere, Esq., and Methuen Industrial Finance Authority, c/o Manager/Director, Town of Methuen, and Alfred Gatta, officially and individually, former Director, Methuen Industrial Finance Authority, and Melvin C. Weagle, Jr., individually and officially, Councillor, Town of Methuen, and William F. Gallagher, officially and individually, Councillor, Town of Methuen, and Carol Delano, officially and individually, Councillor, Town of Methuen, and Edward J. Higgins, Jr., officially and individually, Councillor, Town of Methuen, and Evelyn Lacroix, officially and individually, Councillor, Town of Methuen.

Civ. A. No. 85–3694–WF.

United States District Court,
D. Massachusetts.

Feb. 23, 1987.

**1496**

Wilbur A. Hyatt, Hyatt & Hyatt, Lawrence, Mass., for plaintiffs.

Maurice J. Lariviere, Jr., Methuen, Mass., Richard E. Brody, Morrison, Mahoney & Miller, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

The plaintiffs Alfred D. Fisichelli and Salvatore I. Ambra, Trustees of Am-Fis Realty Trust, claim that the Town of Methuen, the Methuen Industrial Finance Authority, the Town Councillors, Melvin C. Weagle, William Gallagher, Carol Delano, Edward Higgins, and Evelyn Lacroix, officially and individually, and the former director of the Methuen Industrial Finance Authority, Alfred Gatta, officially and individually, violated 42 U.S.C. § 1983 and the federal and state antitrust laws, 15 U.S.C. §§ 1, 2; Mass.Gen.Laws c. 93, §§ 4, 5, when they denied plaintiffs' application for an industrial revenue bond. A hearing was held concerning defendants' motions to dismiss and request for attorneys fees. The matters were taken under advisement.

For the reasons explained below, the defendants' motion to dismiss the § 1983 claims is granted. The defendants' motion to dismiss the antitrust claims is denied. Nevertheless, because plaintiffs' recovery of money damages against local governments and local government officials is limited under federal antitrust law, the court has decided to stay temporarily these claims so that the plaintiffs may determine and inform the court whether they intend to proceed with their remaining claims in this case or proceed instead in state court.

### I. *Factual Allegations*

The relevant allegations of plaintiffs' complaint are as follows. Plaintiffs assert that there was a conspiracy among Town Councillors to deny the plaintiffs an industrial revenue bond. The plaintiffs sought the bond to assist in the financing of a shopping mall. One of the tenants then committed to the mall was a CVS Pharmacy ("CVS"). The plaintiffs had originally sought to lease space in the prospective mall to one of the defendants, Melvin C. Weagle, Jr., a pharmacist who was also a Town Councillor. The plaintiffs and Weagle could not agree on a lease, however, and the plaintiffs signed an agreement with CVS instead. In August 1983, the Director of the Methuen Industrial Finance Authority made his initial recommendation to the Town Council to approve the plaintiffs' industrial revenue bond application. The plaintiffs claim that they met all the criteria for the industrial revenue bond, and that the Methuen Town Council had never denied industrial revenue bonding to any previous applicant who had met all the requirements. Their application was denied.

The plaintiffs allege that Town Councillor Weagle privately contacted the other Councillors and urged them to vote against approving the plaintiffs' request for an industrial revenue bond. He also allegedly persuaded other druggists to appear and oppose the plaintiffs' request. According

to plaintiffs, this concerted action was undertaken to protect the personal and pecuniary interests of the individual defendants. Weagle did not participate in the discussions concerning this matter at the Town Council meeting or vote on the matter.

The plaintiffs contend that the defendants' alleged action deprived them of property without the procedural due process of law guaranteed by the Fourteenth Amendment of the United States Constitution. The plaintiffs also contend that the defendants violated the federal and state antitrust laws.

## II. *The Civil Rights Claim*

■ When deciding a motion to dismiss, the court must accept the allegations of the complaint as true. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam). The court must also examine the alleged facts in the light most favorable to the plaintiff, and the complaint may only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle [him] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976).[1]

42 U.S.C. § 1983 provides a remedy for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws ..." of the United States by a public official. To state a due process claim on which relief may be granted under § 1983, the plaintiff must allege deprivation of a protected property interest, because there can be no due process violation without such an interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

"To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more

than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. It is by no means clear that there is a property interest in an industrial revenue bond. In *Riverview Investments v. Ottawa Community Imp.*, 769 F.2d 324 (6th Cir.1985), *modified*, 774 F.2d 162, the Sixth Circuit granted the defendant's motion for summary judgment, finding that there was no property right in industrial revenue bonds. In *Riverview*, the court focused on the discretionary nature of the statute authorizing industrial revenue bonds, which provided that "an issuer may issue bonds for the purpose of providing moneys to acquire one or more projects ..." *Id.* at 327. The court added that "an entitlement does not arise just because the Corporation has approved the bond applications of other applicants. The approval of other applications does not in itself create a legitimate expectation or entitlement on the part of the plaintiff." *Id.*

The relevant Massachusetts statute authorizing a municipality to issue industrial revenue bonds is M.G.L. c. 40D, § 7. A municipality, however, is not required to issue industrial revenue bonds. *See Opinion of the Justices to the House of Rep.*, 373 Mass. 873, 874, 366 N.E.2d 1230 (1977) ("A municipality acting by and through its Financing Authority *may* secure financial support for industrial development projects through the issuance of bonds.") (Emphasis added). Discretionary language in a statute can be fatal to the existence of a property right. *See Chongris v. Board of Appeals*, 811 F.2d 36, at 43 (1st Cir. Feb. 12, 1987) (focusing on the discretionary language of statute which said license "may be granted," court found no property interest in victualler's license.)

Although *Riverview* does state that the "approval of other applications does not in

---

**1.** Rule 12(b) of the Federal Rules of Civil Procedure states that: "If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided

in Rule 56...." Although affidavits were filed in this case, the court has excluded them from consideration for the purposes of this motion because if, as here, plaintiffs cannot survive a motion to dismiss, any factual disputes created by the affidavits are not material.

itself create a legitimate expectation of entitlement," *Riverview*, 769 F.2d at 327, the plaintiffs in the instant case claim that the Town of Methuen granted industrial revenue bonding to all other applicants who met the requirements. This, they contend, creates a "legitimate claim of entitlement" rather "than a subjective ... expectation that [they] will receive a benefit." *Riverview*, 769 F.2d at 327.

Resolution of this issue, however, is not necessary, because even if it is assumed the plaintiffs have a property right in an industrial revenue bond, they have not stated a § 1983 claim for which relief can be granted. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and its progeny indicate that, even assuming a deprivation of property, plaintiffs have not alleged other facts essential to establishing a violation of procedural due process.

In *Parratt*, a prison employee negligently lost a prisoner's packages when the normal procedure for receipt of mail was not followed. The Supreme Court found this type of random, unauthorized act did not constitute a § 1983 violation where state law provided an adequate remedy. In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court extended the reasoning of *Parratt* to intentional deprivation of property, stating:

[A]n unauthorized intentional deprivation of property by a [public official] does not constitute a violation of the procedural requirements of the Due Process clause of the Fourteenth Amendment *if a meaningful post deprivation remedy for the loss is available.*

*Id.* at 533, 104 S.Ct. 3203. (Emphasis added).

Like *Hudson*, the instant case involves alleged random, unauthorized actions. It is not claimed that Weagle's purported covert maneuverings are part of the established public procedure. In fact, they may, if proven, violate state law.[2] Thus, in order to prevail on a claim of a deprivation of procedural due process, "the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate." *Id.* at 539, 104 S.Ct. at 3206 (O'Connor, J., concurring). *See also Moody v. Town of Weymouth*, 805 F.2d 30 no. 86–1572, slip op. at 8–9 (1st Cir. Nov. 13, 1986); *Lamoureux v. Haight*, 648 F.Supp. 1169 (D.Mass.1986).

Although the court requested briefing on state laws governing conflict of interest affecting public officials, the plaintiffs did not respond to this request. The Commonwealth does, however, have such statutes. M.G.L. c. 268A, § 21(a), for example, provides: "In addition to any other remedies provided by law, any violation of [the conduct of public employees statute] ..., which has substantially influenced the action taken by any municipal agency in any particular matter shall be grounds for avoiding, rescinding or cancelling the action on such terms as the interest of the municipality and innocent third persons require." The Supreme Judicial Court has held that there is a private right of action under § 21(a), at least where plaintiffs "were engaged in a regulated industry and were challenging governmental action threatening their competitive position." *Sciuto v. City of Lawrence*, 389 Mass. 939, 452 N.E.2d 1148 (1983); *Everett Town Taxi, Inc. v. Aldermen of Everett*, 366 Mass. 534, 535, 320 N.E.2d 896 (1974). This is such a case.

The plaintiffs have not, however, alleged that they availed themselves either of their private right of action under the state conflict of interest laws, or of any other remedy provided by state law.[3] Nor have plain-

---

**2.** *See* M.G.L. c. 268A, §§ 19, 20, 21, which relate to conflicts of interest experienced by municipal officials, among others.

**3.** A recent Massachusetts Court of Appeals decision suggests that there might be a number of different avenues of relief for conflict of interest violations by state officials. In *Piccuirro v. Gai-*

*tenby*, 20 Mass.App.Ct. 286, 480 N.E.2d 30 (1985), a real estate dealer who was also a Town Councilman serving on the Board of Health misused his official positions to avoid Board of Health requirements relating to a lot he sold to the plaintiffs. The court held: "[W]e think the findings that the defendant used his official position to obtain favorable Board of Health

tiffs explained why the state remedies for conflict of interest violations would be inadequate.[4] *See Hudson*, 468 U.S. at 539, 104 S.Ct. at 3206 (O'Connor, J., concurring). *See also Campbell v. Shearer*, 732 F.2d 531, 533 (6th Cir.1984) ("[I]n section 1983 damage suits for deprivation of property without procedural due process, the plaintiff has the burden of pleading and proving that state damage remedies are inadequate to redress the alleged wrong."). As a result, the plaintiffs have failed to state a claim for deprivation of property without procedural due process on which relief may be granted.[5]

### III. *The Federal Antitrust Claim*

█ The plaintiffs also allege that defendants violated the federal and state antitrust laws. 15 U.S.C. §§ 1, 2; M.G.L. c. 93, §§ 4, 5. More specifically, the plaintiffs claim that the Town and the Town officials, "individually and collectively," conspired to prevent them from building a mall that would include a pharmacy which would compete with Councillor Weagle's pharmacy and other pharmacies in town. The defendants' motion to dismiss is based on the "state action" exemption from the federal antitrust laws. *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The court finds that the plaintiffs have alleged facts that would, if proven, render the state action exemption inapplicable. A covert conspiracy to restrict competition that is orchestrated by a public official acting to benefit his personal financial in-

terest is not the type of conduct protected by the state action exemption.

Section 1 of the Sherman Act makes unlawful "any contract, combination ... or conspiracy, in restraint of trade or commerce among the several states...." 15 U.S.C. § 1. In order to state a claim under this section, a plaintiff must allege the existence of a contract, combination, or conspiracy that is in restraint of interstate trade or commerce and that has resulted in injury to the plaintiff. *New York Airlines, Inc. v. Dukes County*, 623 F.Supp. 1435 (D.Mass.1985). The plaintiffs contend that they were injured because "they were compelled to seek alternative financing at an overall additional cost of $700,000.00." Plaintiffs' Memorandum of Fact and Law Supporting Motion in Opposition at 20. The plaintiffs also allege a conspiracy to prevent competition. The defendants' motion to dismiss does not address these allegations.

█ Rather, the defendants rely solely on the "state action" exemption. "[T]o obtain [this] exemption, municipalities must demonstrate that their anticompetitive activities were authorized by the state 'pursuant to state policy to displace competition with regulation or monopoly service.'" *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). To satisfy this requirement, the challenged restraint must reflect "a clearly articulated and affirmatively expressed state policy." *Town of Hallie v.*

action to the detriment of the plaintiffs in matters in which he had a financial interest describe the kind of dealing which is 'unfair and deceptive' under c. 93A, § 2." *Piccuirro*, 20 Mass.App.Ct. at 289, 480 N.E.2d 30. The Court awarded money damages under c. 93A.

**4.** The Supreme Court has decided that the fact that state law does not provide remedies as expansive as § 1983 does not mean that the state remedies are inadequate. In *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1980), the Court said:

Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the

state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process.

*See also Chongris, supra,* at 44 (court found state remedy adequate that allowed plaintiffs to regain permit without recovering money damages because no bad faith.)

**5.** Because the requirements articulated in *Parratt* and *Hudson* and discussed *supra* have not been met, it is not necessary to address the defendants' argument that complaints based on land use disputes cannot state a cause of action under § 1983.

*City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 1719, 85 L.Ed.2d 24 (1985).[6]

### A. *Clearly Articulated and Affirmatively Expressed State Policy*

Sufficient state authority to engage in anticompetitive conduct may be found where it is determined "from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of," *City of Lafayette,* 435 U.S. at 389, 415, 98 S.Ct. at 1138, or where the kind of action complained of is an "anticompetitive effect" that "logically would result from [the] authority to regulate." *Town of Hallie,* 105 S.Ct. at 1718–19.

In *Riverview,* the Sixth Circuit found that the anticompetitive activity complained of would logically result from the statute authorizing industrial revenue bonding. "[D]ecisions increasing or restricting competition, though not explicitly stated or recognized in the Ohio statute, are a logical and necessary outcome of the authority to grant industrial revenue bonds ...," *Riverview,* 769 F.2d at 329, because those granted the bonds would be given an advantage over those denied the bonds, who would have to look for alternative and generally more expensive financing. The defendants rely heavily on this case.

Although the plaintiffs make no attempt to respond to defendants' "state action" exemption argument, the defendants' contention is without merit and the motion to dismiss the antitrust claim on this ground must be denied.

In *Corey v. Look,* 641 F.2d 32 (1st Cir. 1981), the First Circuit reviewed a district court dismissal of a complaint involving allegations that a Town and a Steamship Authority conspired to boycott a parking operator. The Town publicly put up for

open lease negotiations a Town lot formerly leased by the Authority. The parking lot operator attempted to lease the lot and provided the Town with revenue information that the Town promised to keep confidential. The Town passed the information on to the Authority. Although the parking lot operator outbid the Authority, the Town, in "a decision without objective or rational foundation," *id.* at 34, awarded the lease to the Authority. After rejecting the parking lot operator's bid to lease the lot, the Town continued to prevent the parking lot operator from competing with the Authority by blocking access to and placing use restrictions on another lot which the parking lot operator acquired.

In *Corey,* the First Circuit found that the legislature did not contemplate the kind of action complained of, which was a "boycott of a parking operator." *Id.* at 37. As one commentator noted, the First Circuit reasoned "that state law recognized [the right to allocate the parking space] but not anticompetitive means that would otherwise be illegal, such as a conspiracy." Areeda, "Antitrust Immunity for 'State Action' After Lafayette," 95 Harv.L.Rev. 435, 350 n. 65 (1981). The fact that there was a clearly articulated and affirmatively expressed state policy allowing the Town to regulate and operate parking lots did not mean there was a clearly articulated and affirmatively expressed state policy allowing the Town to engage in an anticompetitive boycott in its operation of the lot. The First Circuit found "no necessary anticompetitive implication" in the authority to operate parking lots. *Corey,* 641 F.2d at 37. The municipal bodies were simply authorized to act as ordinary competitive economic agents.

In the instant case, a clearly articulated and affirmatively expressed state policy allows the issuance of industrial revenue

---

**6.** Where the anticompetitive conduct is by private parties, the anticompetitive conduct must also be actively supervised by the state in order for the state action exemption to apply. *See California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); *Southern Motor Carriers Rate Conference Inc. v. United States,* 471 U.S.

48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985). In *Town of Hallie* the Supreme Court stated that the "active state supervision requirement should not be imposed in cases in which the actor is a municipality." *Town of Hallie,* 105 S.Ct. at 1720. This case involves allegations of anticompetitive conduct by a municipality and its officers.

bonds. M.G.L. c. 40D. Nevertheless, the state has not authorized government officials to use industrial revenue bonds in furtherance of an illegal conspiracy to restrict competition to benefit the personal financial interests of government officials. Although a conspiracy charge has become "a popular vehicle" to challenge antitrust immunity, "because no official or agency is authorized to conspire in restraint of trade, ... [t]he conspiracy characterization is not inapt when the official ... decides solely out of personal bias in favor of one party, acts to benefit a personal financial interest in privity with an antitrust plaintiff's rivals, or joins with other agency members to benefit their personal interest." Areeda, *supra* at 451–52.

The plaintiffs allege that the denial of industrial revenue bonding resulted from such a conspiracy. Town Councillor Weagle is alleged to have orchestrated a covert conspiracy to deny the plaintiffs industrial revenue bonding, because denial of the bonds would restrict competition with his pharmacy and other pharmacies in town.

■ Although at least one aspect of the *Corey* decision has been altered by *Southern Motor Carriers Rate Conference Inc. v. United States*, 471 U.S. 48, 105 S.Ct. 1721, 1727 n. 21, 85 L.Ed.2d 36 (1985); *Interface Group Inc. v. Mass Port Authority*, 631 F.Supp. 483, 489 (D.Mass.1986),[7] the decision in *Corey* that authorized activity may be conducted in an unauthorized anticompetitive manner remains valid. Towns may lease parking lots, but not engage in anticompetitive conspiracies to boycott parking lot operators. Similarly, municipalities may issue industrial revenue bonds, but public officials cannot use indus-

trial revenue bonds in furtherance of a conspiracy to restrict competition for personal gain. These conspiracies are not "the kind of action contemplated by the legislature." *See Hybrid Equipment Corp v. City of Akron, Ohio*, 742 F.2d 949, 960, n. 12 (6th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 160 (1985). Nor is such conduct the kind of "anticompetitive effect" that "logically would result" from empowering a town to issue municipal bonds. *Town of Hallie*, 105 S.Ct. at 1718–19.

■ "In designing a framework that gave practical effect to art. 88 [of the Massachusetts Constitution which states "the industrial development of cities and towns is a public function"] the Legislature authorized cities and towns to make capital financing available to industrial enterprises at reduced interest rates." *Opinion of the Justices to the House of Rep*, 373 Mass. 873, 874, 366 N.E.2d 1230 (1977). The purpose of the bonds is "to combat current unemployment or the threat of unemployment." *Id.* at 874, 366 N.E.2d 1230. It is also "to secure the community against future unemployment or lack of business opportunity by attracting new industry to the community or by substantially expanding existing industry." *Id.* The legislature did not authorize the type of anticompetitive use of industrial revenue bonding alleged in the instant case. Thus, the state action exemption does not provide a basis for dismissing the plaintiffs' federal antitrust claims.[8]

### B. *The Massachusetts Antitrust Claim*

■ The defendants link their request to dismiss plaintiffs' state antitrust claim with

---

7. In *Corey*, the First Circuit found: "Although specific, detailed legislative authorization is not necessarily required, we think that, absent explicit language, the political subdivision claiming exemption must illustrate the requisite state legislative intent by demonstrating by convincing reasoning that the challenged restraint is necessary to the successful operation of the legislative scheme that the state as sovereign has established." In *Southern Motor Carriers*, however, the Supreme Court found that "state action immunity is not dependent on a finding that an exemption from the federal antitrust laws is 'necessary.'" *Southern Motor Carriers*, 105 S.Ct.

at 1727 n. 21. The Supreme Court made this point in rejecting the contention in the dissent that: "We have only authorized exemptions from the Sherman Act for businesses regulated by federal law when that exemption was necessary in order to make the regulatory act work.... No lesser showing of repugnancy should be sufficient to justify an implied exemption based on a state regulatory program." *Id.* at 1736.

8. Although neither party has addressed the issue, it is appropriate to consider briefly the applicability of the Noerr-Pennington doctrine.

their motion to dismiss the federal antitrust claim. Defendants rely on section 7 of the Massachusetts Antitrust Act which states:

> No provision of this act shall apply to (a) Any activities which are exempt from any of the federal antitrust laws or the Federal Trade Commission Act other than by reason of the absence of a sufficient involvement of or impact upon interstate commerce; or (b) Any activities which are subject to regulation or supervision by state or federal agencies; or (c) Any activities authorized or approved under federal, state or local law.

M.G.L. c. 93 § 7.

The defendants' only argument regarding the dismissal of the state claim is that they are exempt from the federal antitrust laws. Because the state action exemption does not provide a basis for dismissal of the federal antitrust claim in the instant case, the state antitrust claim is not subject to dismissal on this basis either.

## C. *Relief*

The plaintiffs request that this Court award them compensatory damages in the amount of seven hundred twenty-seven thousand dollars against the defendants jointly and severally. Plaintiffs also seek treble damages and costs pursuant to M.G.L. c. 93, § 12 and treble damages and costs pursuant to 15 U.S.C. § 15.

 Federal law, however, does not permit recovery of money damages against municipalities or public officials in their official capacities for violations of the federal antitrust laws. 15 U.S.C. § 35.[9] In view of § 35, the plaintiffs cannot recover money damages under federal law from either the Town of Methuen, the Methuen Industrial Finance Authority, or the local government officials to the extent they are sued in their official capacities. Section 35 does not, however, preclude recovery of money damages from the government officials acting in their individual capacities. The plaintiffs have sued the defendants individually as well as officially. Thus, plaintiffs have stated a federal antitrust claim for which the requested relief can be granted only to the extent that they seek to recover from government officials individually.

As the Supreme Court has stated, "[p]ersonal-capacity suits seek to impose person-

---

That doctrine creates antitrust immunity for private parties lobbying to influence official action. *Eastern Railroads Presidents Conference v. Noerr,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1964). The principle underlying the immunity doctrine is the "right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws." *Noerr,* 365 U.S. at 139, 81 S.Ct. at 530. As long as the people are trying to influence the passage or enforcement of laws, their petition will be protected regardless of their motivations. In *Noerr* the court found, "it is neither unusual or illegal for people to seek action on laws in hope that they may bring about an advantage to themselves and a disadvantage to their competitors." *Id.*

In the instant case, however, there are no private defendants named in the complaint. Nor is there a suggestion that Town Councillor Weagle initiated and organized the alleged conspiracy of Town officials in response to the petitions of private parties. As a result, the Noerr-Pennington doctrine is inapplicable, and the court need not draw lines based on the degree of government participation in a private conspiracy. *Compare Metro Cable Co. v. CATV of Rockford,* 516 F.2d 220, 230 (7th Cir.1975), *with Duke and Company v. Foerster,* 521 F.2d 1277 (3rd Cir.1975), *and Affiliated Capital Corp. v. City of Houston,* 519 F.Supp. 991, 1016–23 (S.D.Tex.1981), *aff'd in part,* 735 F.2d 1555, 1557 (5th Cir.1984).

9. 15 U.S.C. § 35 states that "no damages, interest on damages, costs, or attorneys fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a or 15c), from any local government, or official or employee thereof acting in an official capacity." 15 U.S.C. § 15 provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States ... and shall recover threefold the damages by him sustained...." The "antitrust" laws referred to in 15 U.S.C. § 15 are defined in 15 U.S.C. § 12 to include the Sherman Act. The private remedy provided by 15 U.S.C. § 15 of the Clayton Act repealed equivalent sections of the Sherman Act. Areeda & Turner, Antitrust Law 32 n. 1 (1978).

al liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985).

Suits against public officials in their individual capacities may be barred by qualified immunity. "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Town Councillors and the former director of the Methuen Industrial Finance Authority would, therefore, have qualified immunity if the federal rights they allegedly violated were not clearly established.

"Under this standard the reasonableness of the official conduct is not measured against the official's actual knowledge of constitutional [and statutory] standards and the probable constitutionality of his or her action, but rather against a relatively uniform level of 'presumptive knowledge' of constitutional [and statutory] standards." *Floyd v. Farrell*, 765 F.2d 1, 4–5 (1st Cir.1985).

The Supreme Court has found that "a reasonably competent public official" should be aware of clearly established law governing his conduct. *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738. The meaning of "clearly established" has recently been clarified by the First Circuit, which held that an official need not "show that the principle of law did not exist, or ... there would be few cases on which officials could [have qualified immunity].... The process of change [in the law] involves a sharpening of lines in the law's grey areas absent which there could be excusable mistakes." *De Abadida v. Izquierado Mora*, 792 F.2d 1187, 1190 (1st Cir.1986). The relevant question is whether "a reasonable man in the defendants' position could have believed his conduct to be warranted." *Id.* at 1191.

In this case, the statutory right that defendants are alleged to have violated was at the relevant time clearly established. The defendants are, therefore, not protected by qualified immunity. The right allegedly violated was not in a "grey" area of the law. As discussed earlier, in 1981 *Corey* illuminated the difference between authorization to engage in a particular activity and authorization to engage in an anticompetitive conspiracy that manipulates the activity for anticompetitive purposes. *Corey* clarified what a reasonable official should have already known: municipal officials could lease a parking lot but they could not engage in a secret conspiracy to subvert the bidding process.

Although the instant case does not involve the exact factual pattern of *Corey*, precise factual correspondence is not always needed between the case at hand and the precedents in order to find that a defendant's actions violated clearly established constitutional rights. *See, e.g., Blackburn v. Snow*, 771 F.2d 556, 569 (1st Cir.1985) (although no Supreme Court or court of appeals case with precise factual correspondence, strip searches of prison visitors were found to violate clearly established Fourth Amendment rights if conducted without particularized suspicion that person searched is engaging in wrongdoing); *King v. Higgins*, 702 F.2d 18, 19–21 (1st Cir.), *cert. denied sub nom., Vinzant v. King*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983) (prisoner's due process right to disciplinary hearing was clearly established even before leading case, *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), was decided). Thus, in view of the similarity between *Corey* and the instant case, in 1983 a reasonable public official should have known that a municipality could issue industrial revenue bonds, but municipal officials could not use industrial revenue bonds in furtherance of a conspiracy restricting competition to benefit the personal financial interests of a

municipal officer. *See also Affiliated Capital Corp. v. City of Houston,* 735 F.2d 1555, 1570 (5th Cir.1984) (en banc) (although court found that defendant had qualified immunity because the state action exemption was still in flux in 1978, court stated that "in future cases involving franchise letting, when an elected official instigates, directs or actively participates in an illegal conspiracy designed to circumvent competition on the merits—when the state has not provided the city with an anticompetitive mandate—a reasonable man should know that such actions violate established antitrust law.").

Therefore, the requested federal antitrust relief available is as follows: 15 U.S.C. § 35 prevents money damages from being recovered against either the Town of Methuen, the Methuen Industrial Finance Authority, or the defendants as they are sued in their official capacities. Neither § 35 nor *Harlow,* however, precludes money damages from being recovered against the officials in their individual capacities.[10]

## IV. *Defendants' Request for Attorneys Fees*

 The court has the authority to award attorneys' fees to prevailing defendants where the plaintiffs' suit was "totally frivolous and unwarranted." *Raskiewicz v. Town of New Boston,* 754 F.2d 38, 46 (1st Cir.1985). The plaintiffs in this case, however, have not instituted such a suit.

## V. *Conclusion*

In view of the foregoing it is hereby ORDERED that:

1. Plaintiffs' claims based upon 42 U.S.C. § 1983 are DISMISSED.

2. Plaintiffs' claims against the Town of Methuen, the Methuen Industrial Finance Authority, and other defendants in their official capacities for money damages for alleged violations of the *federal* antitrust laws are DISMISSED.

3. The action is temporarily STAYED until March 31, 1987 so that plaintiffs may determine and inform the court whether they wish to proceed in this case or initiate a state court action in which all of their claims can properly be addressed.

4. If this case is not stayed, discovery shall be completed by December 4, 1987.

---

**10.** The court does not address the effect of 15 U.S.C. § 35 on recovery under state antitrust law. The state law explicitly does not apply to activities which are "exempt from any of the federal antitrust laws." M.G.L. c. 93, § 7. Although the state action exemption does not apply, no damages can be recovered under federal law. Apparently, the Massachusetts courts have not discussed whether protection from damages under federal law falls within the meaning of "exempt from any of the federal antitrust laws." Resolution of this issue is left for later proceedings on these claims.