**FALSTAFF BREWING COMPANY, a Delaware corporation; General Brewing Company, a California corporation; Pearl Brewing Company, a Texas corporation; and S & P Company, a California corporation, Plaintiffs,**

v.

**The STROH BREWERY COMPANY, Peter Stroh, Christopher Lole, Arthur J. Tonna, Roger Fridholm, and Joseph Englert, Defendants.**

No. C–85–1361–JPV.

United States District Court, N.D. California.

Feb. 19, 1986.

---

Joseph L. Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiffs.

William Alsup, Morrison & Foerster, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

VUKASIN, District Judge.

## I. INTRODUCTION

Plaintiffs, Falstaff Brewing Company, General Brewing Company and Pearl Brewing Company, all wholly owned subsidiaries of plaintiff S & P Company [hereinafter collectively referred to as "Falstaff"] filed this civil action for damages, as well as for injunctive and declaratory relief on February 4, 1985. The original complaint alleged that defendants Stroh Brewery Company ["Stroh"], Joseph Englert, and four executives of Stroh[1] conspired to restrain trade, attempted to monopolize the domestic beer market, and tortiously interfered with plaintiffs' contract negotiations, all in violation of Sections 1 and 2 of the Sherman Anti-trust Act, and state law.

On May 2, 1985, this Court denied Stroh's motion to dismiss the complaint in its entirety, instead quashing service of

---

1. These named defendants were Peter Stroh, Chairman and Chief Executive Officer of Stroh; Roger Fridholm, President of Stroh; Arthur Tonna, Vice President for Operations; and Christopher Lole, Vice President for Development.

process, dismissing the complaint as to the Stroh executives, and granting defendant's alternative motion for a more definite statement.[2] On July 26, 1985, a more definite statement, in the form of an amended complaint, was filed.[3] The matter now before the Court is defendant Stroh's motion, joined in by defendant Englert,[4] to dismiss the amended complaint.

## II. THE COMPLAINT

Plaintiffs' complaint alleges violations of Sections 1 and 2 of the Sherman Act, to wit, conspiracy to restrain trade and attempted monopolization. Plaintiffs, as well as defendant Stroh, are engaged in the business of brewing and distributing beer throughout the United States. Accordingly, the relevant market upon which the

2. The Court viewed plaintiffs' initial complaint for violations of Sections 1 of the Sherman Anti-Trust Act to be deficient in its allegations of both concerted action and competitive effect, and the Section 2 claim to be lacking with respect to allegations of specific intent, predatory/anti-competitive conduct and probability of success.

3. At this juncture the Court feels compelled to note the procedural activity, or more correctly, inactivity, that has caused this case, in the Court's opinion, to go down in the annals of case management infamy. On March 8, 1985, defendant Stroh filed and duly noticed for hearing on April 18, 1985, motions to dismiss, or, in the alternative, for a more definite statement, and to quash service of process. According to Local Rule 220–3, plaintiffs' opposition to these motions was required to be filed on or before April 4, 1985. The opposition brief was not filed until April 9. The Court's initial inclination was to treat the motion as unopposed; however, upon further consideration the Court allowed hearing on the motion to be continued to May 7, 1985 to allow for proper briefing of the issues. At the May 7 hearing, the Court, in lieu of dismissing the entire complaint, ordered plaintiff to file a more definite statement and granted the motion to quash service. This ruling was reflected in a minute order entered on the docket on May 8, 1985.

On May 9, 1985, all parties failed to appear at the status conference which was set when the action was originally filed. The matter was placed on the Court's June 20, 1985 dismissal calendar. On that date counsel for defendant Stroh properly appeared. No appearance was recorded by plaintiffs' counsel of record; however, in-house counsel for Pabst Brewing Company entered an appearance. At the June 20 hearing, the Court announced that a reporter's error had evidently caused some confusion as to the precise ruling emanating from the May 7 hearing. The Court reiterated the substance of that ruling, giving plaintiffs twenty days in which to file their more definite statement. A written order reflecting the directive was entered on the docket the same day.

The Court's next brush with the developing debacle that *Falstaff v. Stroh* had become was on July 19, 1985, nine days after the date on which the more definite statement was to be

filed. An associate from the office of plaintiffs' counsel telephoned chambers to explain that the more definite statement could not be filed in the absence of Joseph Alioto, then vacationing in Italy and not expected to return until the first week of August. Although concerned about the sincerity with which plaintiffs' counsel was prosecuting the action, the Court issued an order extending the date by which the more definite statement could be filed until August 1, 1985. The more definite statement, in the form of a first amended complaint, was filed on July 26, 1985.

On August 28, 1985, defendant Stroh filed, and noticed for hearing on September 26, a motion to dismiss the first amended complaint. Pursuant to Local Rule 220–3, plaintiffs' opposition was due on September 12. The opposition was in fact not filed until September 16. On September 20, this Court ordered the aforesaid opposition brief to be "unfiled," thus leaving the motion to dismiss effectively unopposesd. This order, however, was without prejudice; plaintiff being free to formally move for an enlargement of time within which to file its opposition brief. On September 24, 1985, at 4:40 P.M., less than forty-eight hours prior to the scheduled hearing on the motion to dismiss, an application for an enlargement was filed with the clerk. All counsel appeared at the scheduled September 24 hearing, at which time the Court continued the hearing on Stroh's motion to dismiss the first amended complaint until November 21, 1985 in order to allow defendant an adequate opportunity to reply to the opposition. At this hearing, the Court also imposed sanctions, in the amount of $2,500, on plaintiffs' counsel, the law firm of Alioto & Alioto. These sanctions were imposed due to conduct which the Court viewed as a continuing failure and refusal to abide by the orders of this Court, the procedures and Rules of the Northern District of California and the Federal Rules of Civil Procedure, as well as flagrant indifference toward counsel's responsibilities to his clients.

4. On November 6, 1985, following eight months of apparently successful evasion of service, this Court ordered that the elusive Joseph Englert be served by publication. Thereafter, on December 2, 1985, through retained counsel, Mr. Englert joined in Stroh's Motion to Dismiss the Amended Complaint.

claim must be determined is the United States domestic beer market. The alleged acts constituting the anti-trust violations are: (1) Stroh came to an internal decision to institute predatory pricing programs aimed at eliminating independent, smaller breweries of the size of plaintiff; (2) Stroh publicly announced that plaintiff companies "can't survive and we're looking at picking up those companies;" (3) Stroh directed the public remarks at the distributor network of plaintiffs; (4) Prior to the public announcement, Stroh salesmen and distributors engaged in continuing commercial disparagement of plaintiff companies; (5) Stroh interfered with plaintiff S & P's plan to buy Pabst Brewing Company and delayed the acquisition by approximately six months; and (6) Stroh is selling its beer below cost in markets specifically selected to injure or destroy plaintiffs' sales and profits. *See* Amend.Compl., ¶ 12. Plaintiffs further allege the specific intent behind the aforementioned acts to be the elimination of plaintiff companies, and, therefore, price competition in the United States. Finally, plaintiff alleges the effects of Stroh's acts to be, among others: (1) delaying plaintiff S & P's aquisition of Pabst; (2) impairing plaintiffs' profits; and (3) causing economic concern among plaintiffs' network of distibutors. Amend. Compl., ¶ 15.

## III. MOTION TO DISMISS

■ In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may only determine the legal sufficiency of the complaint. For purposes of a motion to dismiss, material allegations of the complaint are to be taken as admitted. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). The complaint is to be liberally construed in favor of plaintiffs. *See* F.R.Civ.P. 8(f); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The complaint should not be dismissed unless it appears that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley, supra,* 355

U.S. at 45–46, 78 S.Ct. at 101–02. The Court, however, does not have to accept every allegation in the complaint as true. Conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted for purposes of a Rule 12(b)(6) motion. *See, e.g., United States v. Tulare Lake Canal Co.,* 535 F.2d 1093, 1097 (9th Cir.1976). With these preliminary considerations in mind, the Court turns to the claims which defendant moves to dismiss.

## A. SHERMAN ACT, SECTION 1 CLAIM

■ Section 1 of the Sherman Act prohibits contracts, agreements and conspiracies in restraint of trade. 15 U.S.C. Section 1. Accordingly, the complaint must set out, at a minimum, some concerted action among two or more persons or distinct business entities, which is intended to harm or unreasonably restrain competition, and some adverse effect on competition caused by the concerted action. *Kaplan v. Burroughs Corp.,* 611 F.2d 286, 290–91 (9th Cir.1979). Although plaintiffs' complaint is somewhat lacking in specificity with respect to concert of action, that being the alleged conspiracy between Falstaff and its distributors and salesmen, these shortcomings should not form the basis for dismissal. It is sufficient, for purposes of a Rule 12(b)(6) motion that plaintiff has alleged some concerted action. Whether or not this allegation in fact is true should be determined on a factual basis, not as a matter of law. For like reasons, the complaint also passes 12(b)(6) muster with respect to the allegation of defendants' intent to restrain trade.

■ The cornerstone of anti-trust law is competition. Congress' intent in passing the Sherman Act was not to subject all business and commercial torts to the scrutiny of federal law. Indeed, only acts which adversely affect competition are proscribed. Accordingly, the primary consideration in determining a Section 1 claim is whether the alleged acts have significant

anticompetitive effects. *Sherman v. British Leyland Motors, LTD.*, 601 F.2d 429, 449 (9th Cir.1979). It is with regard to the requirement of an allegation of this adverse effect on competition that the Section 1 complaint is defective.

■ In making this determination the Court notes section seven of the amended complaint titled "Effects." In this section, plaintiffs state the alleged results of Stroh's illegal activity, to wit: delaying plaintiffs' acquisition of Pabst stock, impairing plaintiffs' profits, and causing economic concern among plaintiffs' distributors. Amend.Compl., ¶ 15. Nowhere does plaintiff claim an adverse effect on competition as distinguished from effects on plaintiff's own business. Absent injury to competition, injury to plaintiffs as competitors will not satisfy the pleading requirements of Section 1. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). The anti-trust laws were enacted for the protection of competition not competitors. *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962).

■ In its opposition to the motion to dismiss plaintiff claims that no allegation of anti-competitive effect is necessary. Rather, plaintiff argues that the alleged actions of Stroh are *per se* anti-competitive; that by virtue of plaintiffs' commercial demise, competition in the domestic beer industry will necessarily suffer. The law, however, is clear. Only in certain limited circumstances will an adverse impact on a single or group of competitors constitute an adverse impact on competition as a whole. This *per se* treatment is limited to traditional anti-trust activities such as horizontal and vertical price fixing, horizontal divisions of markets, and horizontal boycotts or concerted refusals to deal. *See N.C.A.A. v. Board of Regents of University of Oklahoma*, 468 U.S. 85, 104 S.Ct. 2948, 2960–62, 82 L.Ed.2d 70 (1984); *Silver v. New York Stock Exchange*, 373 U.S. 341, 347–49, 83 S.Ct. 1246, 1251–52, 10 L.Ed.2d 389 (1963); *Northern Pacific Railway v. United States*, 356 U.S. 1, 5–7, 78 S.Ct. 514, 518–19, 2 L.Ed.2d 545 (1958); *United States v. Sacony-Vacuum Oil Co.*, 310 U.S. 150, 218, 60 S.Ct. 811, 841–42, 84 L.Ed. 1129 (1940). Plaintiffs have not alleged any of these types of activities.

The cases relied on by plaintiffs to support the application of a *per se* analysis are inapposite. In *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959) the Court held that elimination of a single competitor through a group boycott/concerted refusal to deal was *per se* anticompetitive. In the present action, although plaintiffs have alleged that Stroh's activities are aimed at eliminating plaintiffs from the domestic beer market, there is no allegation of boycott. In *Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), the Supreme Court applied a *per se* analysis when the Exchange members collectively removed the private wire services of a single broker. Finally, in *United States v. General Motors Corp.*, 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966), General Motors' agreement with franchise dealers to eliminate the automobile sales of discount houses was held to be a *per se* restraint of trade. Plaintiff has not alleged any such concerted deprivation of essential goods or services upon which reliance on these cases could be based. The court recognizes the fact that a multitude of cases have imposed anti-trust liability on a *per se* basis when the anti-competitive activity is directed at only one competitor. The common denominator among these cases, however, is the notion that certain actions, such as horizontal and vertical price fixing, horizontal divisions of markets, and horizontal boycotts ore concerted refusals to deal, are presumed to be anti-competitive, regardless of any market context. Plaintiffs have not alleged any such *per se* anti-competitive action by defendant Stroh.

At oral argument on the motion, plaintiffs' counsel intimated that the action was in fact a price fixing case. Dec. 5, 1985, Tr. 15:16–16:20. The only reference to

prices in the complaint, however, is the paragraph containing the allegation of intent. Plaintiff alleges that defendants' intent is to eliminate plaintiff from the domestic beer market. Amend.Compl., ¶ 13. This elimination, it is contended, will remove a "downward pressure on competitive beer prices." *Id.* The complained of *concerted acts*, in this Court's opinion, do not constitute price fixing.[5] Rather, the complaint indicates a concerted commercial disparagement of the plaintiff companies by Stroh, its retailers and distributors.

Furthermore, this stated removal of "downward pressure" on price competition does not constitute a sufficient allegation of anti-competitive effect. Such conclusory, self-serving allegations, and the inferences therefrom, need not be given credence by this Court. Under the rule of reason, alleged adverse effects of competition must be causally related to the alleged concerted acts. *Kaplan, supra,* 611 F.2d at 290–91. Plaintiffs' complaint fails to allege any reasonable or legitimate connection between the asserted anti-competitive effect and either the concerted commercial disparagement or the interference with the aforementioned Pabst acquisition.

To be sure, the complained-of acts by Stroh appear to present the potential for severe and extensive commercial injury. From the allegations in both the original and amended complaint, however, it is clear to the Court that the specified adverse effects resulting from Stroh's alleged conduct relate solely to the business of the plaintiffs rather than to competition in the U.S. domestic beer market. The legislators who passed the Sherman Act did not intend to make ordinary business torts federal torts. Their concern was with business torts which cause a public injury by making markets less competitive. *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 655 (7th Cir.1984). Although Stroh's

actions, if left unchecked, might lead to the commercial demise of plaintiffs, the elimination of a single competitor, standing alone, will not constitute an injury to competition compensable under the Sherman Act. *Gough v. Ross Moor Corp.,* 585 F.2d 381, 386. (9th Cir.1978). To injure, even to cripple or destroy, one or two competitors in a market will not, if there are many competitors in that market, have much, if any, effect on consumers or anyone else beside the competitors in question. *Sutliff, supra,* 727 F.2d at 655. Indeed, it is the large number of competitors and their relative power in the subject market, U.S. domestic beer brewing and sales, which precludes plaintiffs' claims under Section 1 of the Sherman Act, as well as Section 2.

**B. SHERMAN ACT SECTION 2 CLAIM**

Section 2 of the Sherman Act proscribes monopolization of, as well as attempts and conspiracies to monopolize, any part of the trade or commerce of the United States. 15 U.S.C. § 2. Generally, a Section 2 claim consists of three elements: (1) specific intent to control prices or destroy competition in the relevant market; (2) predatory or anti-competitive conduct directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success. *Foremost Pro Color v. Eastman Kodak Co.,* 703 F.2d 534, 543–44 (9th Cir. 1983). The requisite specific intent and dangerous probability of success may, in appropriate circumstances, be inferred from the existence of predatory or anti-competitive conduct. *Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830, 845 (9th Cir.1980). In light of this Court's determination that the complaint fails to allege an adverse effect on competition resulting from Stroh's actions, or any *per se* anti-competitive acts, plaintiff cannot rely on any such inferences to overcome infirmities

**5.** Under the Sherman Act prices are fixed when they are agreed upon. *United States v. Masonite Corp.,* 316 U.S. 265, 276, 62 S.Ct. 1070, 1076, 86 L.Ed. 1461 (1942). The agreement to fix prices renders the conspiracy illegal. *Adolph Coors*

*Company v. FTC,* 497 F.2d 1178, 1184 (10th Cir.1974), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1974). Plaintiffs have alleged no agreement to fix or stabilize prices.

with respect to specific intent and dangerous probability of success.

The amended complaint asserts that defendant Stroh intends to eliminate plaintiff companies and to assume third place in the domestic beer market Amend. Compl., ¶¶ 13 & 14. Plaintiffs, however, have not alleged any specific intent on the part of defendants to control or destroy competition in the relevant market beyond normal competition. Even direct evidence of intent to vanquish a rival or exclude competition is insufficient to establish specific intent to monopolize by some illegal means. *Blair Foods Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 670 (9th Cir.1980). More than mere intent to beat the opposition is required to establish specific intent to monopolize. *In re IBM Peripheral EDP Devices Anti-Trust Litigation*, 481 F.Supp. 965, 1010 (N.D.Cal.1979); *aff'd sub nom., Transamerica Computer Co. v. IBM Corp.*, 698 F.2d 1377 (9th Cir.), *cert. denied*, 464 U.S. 955, 104 S.Ct. 370, 78 L.Ed.2d 329 (1983). To conclude otherwise would contravene the very essence of a competitive market place which is to prevail against all competitors. The Sherman Act was not intended as a shield against all competitive practices tending to improve a firm's market position. *Hirsh v. Martindale-Hubble, Inc.*, 674 F.2d 1343, 1348 (9th Cir.1982).

A showing of monopoly power within the relevant market has consistently been equated with the requisite probability of success element of a Section 2 claim. Market share is evidence from which the existence of monopoly power may be inferred. Whether monopoly power actually exists depends on a variety of factors. The focus must be on the danger to competition presented by the activity and the actor. In some circumstances clearly anti-competitive conduct, coupled with specific intent, may pose such a threat to competition that it should be condemned regardless of the market power of the actor. In a sense this conduct presents an inherent probability of success. Such treatment is usually limited to activities which are *per se* anti-competitive under Section 1 of the Sherman Act. *See California Computer Products, Inc. v. IBM Corp.*, 613 F.2d 727, 736 (9th Cir. 1979); *Sherman, supra,* 601 F.2d at 453 n. 47; *Gough, supra,* 585 F.2d at 390. Conversely, when the conduct involved is ambiguous with respect to its anti-competitive nature, the requisite danger of success may not exist absent appreciable market power. *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924–25 (9th Cir. 1980). Although this Court recognizes that blind reliance on market share data, divorced from commercial reality, can give a misleading picture of a business concern's actual ability to control prices or exclude competition, there is a minimum market share necessary to possess monopoly power when the complained of actions are not *per se* anti-competitive.

In the instant case, plaintiffs' complaint denominates the relevant market as the entire domestic beer market of the United States. Amend.Compl., ¶ 7. The admitted runaway leaders in this market are the Anheuser-Busch Brewing Company and the Miller Brewing Company, who together control approximately sixty percent of the beer sales in the United States. Amend.Compl., ¶ 14; Tr.17:20–24. Positioned behind these two market leaders are various small and medium-sized brewers of beer, among them defendant Stroh and the plaintiff companies.[6] At the December 5 hearing on the motion to dismiss plaintiffs' market share was determined to be eight percent, while defendant's was placed at thirteen percent. Tr.17:16–19. It is alleged that as a distant third place finisher in this market Stroh does in fact possess market monopoly power.

While this Court acknowledges that the use of market share data as a basis for determining monopoly power has an unsettled history, it is abundantly clear that

---

**6.** The Court takes judicial notice of these other breweries, including most notably the Adolph Coors Company, the Anchor Steam Brewer, and the Blitz Weinhardt Brewery, of whose existence and viability this Court is well cognizant.

defendant, as a matter of law, cannot make the required showing of monopoly power and thus a dangerous probability of monopolization. In *General Communications Engineering, Inc. v. Motorola Communications Electronics, Inc.*, 421 F.Supp. 274, 291–92 (N.D.Cal.1976) the district court held that a market share of seventy-one percent, due to the competitive nature of the industry, was insufficient to show monopoly power. While in *Transource International v. Trinity Industries, Inc.*, 725 F.2d 274, 283–84 (5th Cir.1984) the Court viewed market shares in the range of sixteen to twenty-five percent to be insufficient as a matter of law to support monopolization. *See also Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968 (8th Cir.1968), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969) (twenty percent market share inadequate to allow exclusion of competition or control of prices). In the present case defendant Stroh hold a mere thirteen percent of the relevant market. Common sense, as well as case law, leads this Court to believe that no brewer other than Anheuser-Busch or Miller could possibly possess monopoly power in the domestic beer market as a whole. Therefore, having failed to allege actions that are *per se* anti-competitive, defendants' low market share precludes plaintiff from being able to demonstrate a dangerous probability of success in its alleged attempt at monopolization.

To support their claim that the defendant does possess monopoly power, plaintiffs point to the fact that Stroh's merger with Schlitz Brewing Company was subject to the scrutiny of the Justice Department's Anti-Trust Division, and in fact resulted in a consent decree under which defendant was required to divest itself of one brewery.[7] Plaintiff asserts that the consent decree itself demonstrates Stroh's monopoly power. Plfs' Opp., p. 7. This Court, however, declines to make such an unreasonable inference. At best, the activity surrounding the Schlitz acquisition demonstrates market power in the southeastern United States. Plaintiffs have chosen to define the relevant market, for purposes of their Sherman Act claims, to encompass domestic beer sales in the *entire* United States. Amend.Compl., ¶ 7. As such, the Schlitz acquisition has little relevance to, and is entitled to little weight in, this Court's evaluation of the sufficiency of the complaint with respect to allegations of monopoly power.

## IV. CONCLUSION

Plaintiffs' amended complaint clearly fails to state a Sherman Act anti-trust claim upon which this Court could grant relief. Furthermore, the deficiencies in the amended complaint are substantially the same deficiencies which compelled the Court to previously order plaintiff, in lieu of dismissal, to file a more definite statement. It appears to the Court that plaintiffs have failed to cure these defects, and in fact, based on the allegations of the amended complaint, cannot do so. Further amendment would be futile in this Court's view. The amended complaint contains little new material, rather it recites the same conclusory allegations previously rejected

---

7. On April 16, 1982, the Department of Justice filed a complaint under Section 7 of the Clayton Act, 15 U.S.C. § 18, challenging the proposed merger of the Joseph Schlitz Brewing Company and the Stroh Brewing Company. On November 10, 1982, a court-approved consent decree was entered into by Stroh and the Department of Justice. This consent decree was later modified in September 1983. Under the terms of the original and modified consent decrees the proposed merger was allowed to occur. As a condition of the approval, Stroh was required to divest itself of either the Memphis, Tennessee or Winston-Salem, North Carolina brewing plants, acquired from Schlitz in the merger, or the Stroh brewery in Tampa, Florida. It is obvious to this Court that the merger raised governmental concern with regard to competition in the beer market. It is equally obvious, however, that by the very terms of the consent decree, requiring divestment of one of three plants all located in the southeast, the concern was limited to a single geographical region. Also worth noting is the fact that the consent decree, by its express terms, constituted no admission, finding of fact or conclusion of law. *United States v. The Stroh Brewery Co.*, 1982–83 Trade Cas. (CCH) ¶ 65,037 (D.D.C. Nov. 10, 1982), *modified*, 1983–2 Trade Cas. (CCH) ¶ 65,627 (D.D.C. Sept. 15, 1983).

by the Court. As such, dismissal with prejudice is appropriate. *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 650–51 (9th Cir.1984).

Although dismissal with prejudice is a harsh and draconian measure upon which to terminate a lawsuit, there are sound policy reasons for denying further leave to amend an anti-trust complaint where two attempts have failed to sufficiently state a claim. Discovery in these actions is quite extensive, and the expense of such litigation crushing. To require defendants to further defend an anti-trust action, where it appears that plaintiffs cannot properly allege, much less prove, anything beyond mere business torts or unfair trade practices, would be a gross miscarriage of justice. Plaintiffs, in fact, may have been harmed in their business by the alleged acts of defendants. The remedy upon which they pin their claim, however, a civil anti-trust action pursuant to Sections 1 and 2 of the Sherman Act, was not intended to serve as either a shield or sword against such individual commercial injury. While this Court does not rule on the validity or viability of any potential business tort claims, it is abundantly clear that no Sherman Act anti-trust action has been properly alleged. Accordingly;

IT IS HEREBY ORDERED that the above-entitled action be, and is, DISMISSED.