ACTION AMBULANCE SERVICE,
INC., Plaintiff,

v.

ATLANTICARE HEALTH SERVICES,
INC., Atlanticare Medical Center, Inc.,
Life–Line Ambulance Service, Inc., and
Life–Line Atlanticare Limited Partner-
ship, Defendants.

Civ. A. No. 92–11093–MA.

United States District Court,
D. Massachusetts.

Feb. 5, 1993.

**34**

Alan L. Kovacs, Ferriter, Scobbo, Sikora, Caruso & Rodophele, Boston, MA, for Action Ambulance Service, Inc.

Thayer Fremont–Smith, Choate, Hall & Stewart, Bruce F. Metge, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for Atlanticare Medical Center, Inc., and Atlanticare Health Services, Inc.

Bruce F. Metge, and Peter Kimm, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Washington, DC, for Life–Line Ambulance Service, Inc.

Peter Kimm, Mintz, Levin, Cohn, Washington, DC, for Life–Line Atlanticare Limited Partnership.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiff in this case, Action Ambulance Service, Inc. ("Action"), alleges in a thirteen-count complaint that the defendants have violated federal antitrust and state consumer protection laws. The defendants, AtlantiCare Health Services, Inc. ("AHS"), Atlanticare Medical Center, Inc. ("AMC"), Life–Line Ambulance Service, Inc. ("Life–Line"), and Life–Line AtlantiCare Limited Partnership ("Partnership"), have moved to dismiss three counts and to strike certain other allegations.

## FACTUAL BACKGROUND

There are two acute care hospitals in Lynn, Massachusetts, a city of about 80,000 people. Both hospitals are owned and operated by the defendant AMC. They derive approximately 65% of their combined income from Medicare and Medicaid reimbursements. The defendant AHS, a wholly-owned subsidiary of AMC, operates a nursing home and an imaging center. In May 1985, AHS and the defendant Life–Line, which had been in the ambulance business since 1981, formed a limited partnership to provide ambulance service in Lynn and surrounding areas.

Action, which has provided ambulance service in and around Lynn since 1978, states that prior to 1985, patients at AMC's hospitals who needed ambulance transportation were allowed to select a provider from among various competing services, including Action. However, under the terms of the 1985 partnership agreement between AHS and Life–Line, AHS receives fifty percent of the profits generated by Life–Line's provision of ambulance services. In return, AHS and AMC agreed to refer all patients requiring ambulances to Life–Line. Action alleges that this agreement is, *inter alia*, an illegal tying arrangement violating both the Sherman Act, 15 U.S.C. §§ 1, 2, and the Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass.Gen.L. ch. 93A, § 2, and an illegal kickback scheme violating state and federal Medicare and Medicaid anti-fraud statutes, Mass.Gen.L. ch. 118E, § 21B and 42 U.S.C. § 1320a–7b.

This case is presently before me on the defendants' motions to dismiss Counts I and VII, the tying counts, and Count XIII, which alleges a violation of the Massachusetts Consumer Protection Act based on the payment of illegal kickbacks. The defendants have also moved to strike the allegations of fraud which form the partial basis for Counts II, III, IV, VIII, IX and X, as well as paragraph 35 of the Complaint, which alleges that the defendants improperly influenced the City of Lynn to enter exclusive use agreements with the Partnership. Finally, in accordance with the statute of limitations applicable to antitrust actions, Life–Line and the Partnership move to dismiss any portions of any claims

purporting to relate to the period between May 1985 and May 1988.

## LEGAL STANDARD

The standard for dismissal under Fed. R.Civ.P. 12(b)(6) is clear: " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Arroyo Otero v. Hernandez Purcell*, 804 F.Supp. 418, 420 (D.P.R.1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The court not only must accept the factual averments of the complaint as true, but also must draw all reasonable inferences in favor of the plaintiff. *See, e.g., id.; Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992) (same).

## DISCUSSION

### 1. *Illegal Tying*

Action alleges in Counts I and VII of its complaint that from 1985 to the present, the defendants have "illegally tied the provision of hospital services (tying product) to ambulance services (tied product) in violation of Section 1 of the Sherman Act" and of section 2 of the Massachusetts Consumer Protection Act. Complaint, ¶¶ 39, 74. The defendants Life–Line and the Partnership take the position that they are not in the business of providing hospital services, and that the relevant precedents establish the proposition "that a party who is not a participant in the market for the tying product cannot engage in tying." Memorandum in Support of Motion to Dismiss of Defendants Life–Line Ambulance Services, Inc. and Life–Line Atlanti-Care Limited Partnership [hereinafter "Memorandum of Life–Line and Partnership"] at 9. Similarly, the defendants AMC and AHS argue that because AMC does not provide ambulance services, and because AHS does not provide hospital services, these counts fail to state a claim as to them for the reasons stated by Life–Line and the Partnership.[1] Memorandum in Support of

Motion of AtlantiCare Medical Center, Inc. and AtlantiCare Health Services, Inc. to Dismiss the "Tying" and the Medicare and Medicaid Fraud Counts of Plaintiff's Complaint and to Strike Immaterial and Redundant Allegations [hereinafter "Memorandum of AMC and AHS"] at 10.

The Supreme Court has defined a tying arrangement "as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Northern Pac. Ry. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 519, 2 L.Ed.2d 545 (1958) (footnote omitted). Not all tying arrangements, however, are illegal. The Sherman Act has been construed to prohibit only those contracts, combinations, and conspiracies which " 'unreasonably' restrain competition." *Id.* at 5; 78 S.Ct. at 518. If two products are sold together because there is no demand for one separate from the other, or if tying regulates and promotes competition rather than destroying it, the tie-in will survive judicial scrutiny. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21–22, 104 S.Ct. 1551, 1562–1563, 80 L.Ed.2d 2 (1984) (stating that a tying arrangement is not illegal unless there is enough demand for each service or product independently from the other "to identify a distinct product market in which it is efficient to offer [each service or product] separately"); *Hand v. Central Transport, Inc.*, 779 F.2d 8, 10 (6th Cir.1985) (" 'The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition, or whether it is such as may suppress or even destroy competition.' ") (quoting *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918)).

Illegal tie-ins, on the other hand, are those which

harm[ ] competing sellers of the tied product by foreclosing them from access to the market for reasons having nothing to do with the merits of the tying seller's prod-

---

1. I note at the outset that because AMC *is* in the market for the tying product, hospital services, I take its argument to be that as a matter of law an entity cannot engage in illegal tying unless it participates in the markets for both the tying and tied products.

uct, and harm[ ] buyers by restricting their range of choice in the tied product market.

*Anderson Foreign Motors, Inc. v. New England Toyota Distrib., Inc.,* 475 F.Supp. 973, 980 (D.Mass.1979) (citing *Northern Pac.* and *Times–Picayune Pub.. Co. v. United States,* 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953)). The Supreme Court has explained that "the essence of illegality in tying agreements is the wielding of monopolistic leverage; a seller exploits his dominant position in one market to expand his empire into the next." *Times–Picayune,* 345 U.S. at 611, 73 S.Ct. at 882. *See also Jefferson Parish,* 466 U.S. at 27, 104 S.Ct. at 1566 ("Tying arrangements need only be condemned if they restrain competition on the merits by forcing purchases that would not otherwise be made.").

· [3–5] The legality of tying under the Sherman Act may be analyzed either in terms of the per se rule or the rule of reason. In its present posture, this case presents a per se question. To show a per se violation, the plaintiff must establish three elements: 1) that there exists an actual tie between two separate products; 2) that the seller has sufficient economic power in the market for the tying product to force consumers to accept the tied product; and 3) that a not insubstantial amount of interstate commerce in the tied product is affected. *See, e.g., Northern Pac.,* 356 U.S. at 5–6, 78 S.Ct. at 518–519; *Jefferson Parish,* 466 U.S. at 20–29, 104 S.Ct. at 1562–1567; *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors,* 850

F.2d 803, 814 (1st Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988).[2]

At this preliminary stage, the defendants have not disputed Action's ability to establish any of the three well-settled elements of a per se claim. Rather, the defendants argue that there is a fourth element implicit in the test for a per se violation—namely, that the defendant must be a participant in the markets for both the tying and the tied product.

To support this proposition, the defendants cite a number of Sherman Act cases in which a single manufacturer or distributor attempted to tie one of its products to another of its products. *See, e.g., Grappone, Inc. v. Subaru of New England, Inc.,* 858 F.2d 792 (1st Cir.1988) (discussing a regional Subaru distributor's requirement that a local dealer buy spare Subaru parts as a condition of continuing to receive its allocation of new Subarus). Cases involving a single defendant participating in both the tying and the tied markets may perhaps be prototypical, but the evils which the Sherman Act is meant to prevent occur whether the tying is within one firm or by agreement between two firms.[3]

While this court is unaware of (and has not been cited) any case which explicitly discusses defendants' proposition, the existence of a phantom fourth element is disproved by the factual circumstances of *Jefferson Parish.* That case involved an agreement between East Jefferson Hospital and the Roux & Associates anesthesiology firm. Pursuant to contract, only Roux anesthesiologists were

---

2. If Action were unable to prove all the elements of the per se test, it might still state a claim under the rule of reason. Reduced to essentials, the difference between the two lines of inquiry is that under the rule of reason, but not under per se analysis, the plaintiff "has the burden of proving that the [challenged practice] violated the Sherman Act because it unreasonably restrained competition." *Jefferson Parish,* 466 U.S. at 29, 104 S.Ct. at 1567. In other words, once a plaintiff has established the three elements of the per se test, anti-competitive effect on the market for the tied product is presumed and its actual scope need not be shown. However, the per se plaintiff must still "make some minimal showing of real or potential foreclosed commerce caused by the tie, if only as a matter of practical inferential common sense." *Wells Real Estate,* 850 F.2d at 815 n. 11. *See also Jefferson Parish,* 466 U.S. at

15, 104 S.Ct. at 1560 (*"Per se* condemnation—condemnation without inquiry into actual market conditions—is only appropriate if the existence of forcing is probable.") (footnote omitted).

3. It is counterintuitive to suppose that a company could evade the strictures of anti-tying doctrine merely by erecting corporate walls between the tying and the tied products. It would gut that doctrine to allow businesses to avoid charges of illegal tying either by spinning off subsidiaries to produce one of the tied products or by entering into kickback schemes with unrelated entities. The very language of the Sherman Act prohibits contracts, combinations, and conspiracies in restraint of trade, each of which seems to contemplate the involvement of two or more entities.

permitted to practice anesthesiology at the hospital. Roux was not in the business of providing acute care hospital services, nor was East Jefferson a participant in the anesthesiology market. Nevertheless, the Supreme Court found that the contract between them met the first prong of the per se test: "the hospital's requirement that its patients obtain necessary anesthesiological services from Roux combined the purchase of two distinguishable services in a single transaction." 466 U.S. at 24, 104 S.Ct. at 1564–1565 (footnote omitted) (remanding for further proceedings under the rule of reason because the record did not establish that the hospital enjoyed the kind of dominant market position necessary to meet the second prong of the per se test). The Supreme Court gave no indication that the fact that Roux and East Jefferson participated in different markets affected its analysis in any way.[4] This court therefore declines the defendants' invitation to add a fourth element to the venerable three-pronged per se test. The motion to dismiss Counts I and VII is denied.

### 2. Kickback Scheme

■ The defendants next argue that Action's allegations that the defendants have engaged in a Medicaid and Medicare fraud scheme in violation of Mass.Gen.L. ch. 118E, section 21B and 42 U.S.C. section 1320a–7b must be dismissed because those criminal statutes provide no private right of action.[5] The fraud claims form the partial basis for Action's federal antitrust allegations in Counts II, III, and IV and for the analogous state violations in Counts VIII, IX, and X, as well as the entire basis for the violation of Mass.Gen.L. ch. 93A, section 2 alleged in Count XIII.

Action does not contend that the two statutes at issue contemplate a private right of action. Therefore, for purposes of this motion, I will assume that no such action is provided or implied. Therefore, the question before me is whether violations of criminal anti-fraud statutes which do not provide a private cause of action may properly be alleged as bases for claims under either federal antitrust or state unfair business practice laws where the relief requested is equitable.[6]

### a. The Sherman Act

The defendants argue that two precedents from other jurisdictions stand for the proposition that violations of the anti-fraud statutes may not serve as the basis for injunctive

---

4. This is strong although indirect evidence that there is no requirement that a defendant must participate in the market for the tying as well as the tied product in order for an illegal tie to exist. If there were such a requirement, it would have been simpler and more logical for the Court to have disposed of *Jefferson Parish* by noting that Roux did not participate in the market for the tying service (acute care) than by conducting an inquiry into East Jefferson's market share and the alleged market imperfections which supposedly allowed the hospital to charge noncompetitive prices.

5. Section 21B provides that

[w]hoever solicits or receives any remuneration ... in return for purchasing, leasing, or ordering or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under this chapter, or whoever offers or pays any remuneration ... to induce such person to [do the same] shall be punished by a fine ... or by imprisonment ... or by both....
Mass.Gen.Laws Ann. ch. 118E, § 21B (West 1992). Section 1320a–7b provides in part that

whoever knowingly or willfully solicits or receives any remuneration ... (A) in return for referring an individual to a person for the furnishing ... of any item or service for which payment may be made in whole or in part under subchapter XVIII of this chapter or a State health care program, or (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under subchapter XVIII of this chapter or a State health care program, shall be guilty of a felony and ... shall be fined ... or imprisoned ... or both.
42 U.S.C.A. § 1320a–7b(b)(1) (West 1991). Section 1320a–7b(b)(2) is a parallel provision making it unlawful to offer remuneration to induce others to make referrals.

6. Action's memorandum does not address the question of whether violations of the anti-fraud statutes may properly serve as a basis for Sherman Act claims. I take it, therefore, that Action concedes that they cannot. Nevertheless, I summarize the case which appears to have so held for the sake of any light it may throw on the inquiry under the Massachusetts Consumer Protection Act.

relief under the Sherman Act. Neither of these opinions provides a detailed discussion of the question. In *West Allis Memorial Hosp., Inc. v. Bowen*, 852 F.2d 251 (7th Cir.1988), the plaintiff hospital challenged a practice of the defendant hospital as violative of, *inter alia*, the Sherman Act and 42 U.S.C. section 1395nn(b)(2)(B), which was the precursor to section 1320a–7b. After finding that the precursor anti-fraud statute did not provide a private right of action to health care providers, the Seventh Circuit upheld the decision of the district court that the violation of the anti-fraud statute did not provide the basis for an injunction under the .Sherman Act. Both courts considered the question conclusively settled by the maxim "equity will not enjoin the commission of a crime." *See West Allis*, 852 F.2d at 256–57.[7]

The defendants also cite *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F.Supp. 832 (S.D.N.Y.1988). In that case, a manufacturer of cardiac pacemakers alleged as an antitrust claim that one of its competitors had engaged in a conspiracy to violate section 1395nn. *See Telectronics*, 687 F.Supp. at 837. The court stated that "[t]his allegation by itself is insufficient to state a claim under section 1 of the Sherman Act." *Id.* In the next sentence, however, the court noted that " '[t]he cornerstone of [antitrust] law is competition.' " *Id.* (quoting *Falstaff Brewing Co. v. Stroh Brewery Co.*, 628 F.Supp. 822, 826 (N.D.Cal.1986)). This quotation, as well as the context of the entire paragraph, leads me to believe that the *Telectronics* court was concerned not with the propriety of pleading a criminal violation as the basis of an antitrust claim, but rather with the failure of the manufacturer to assert the necessary element of unreasonable restraint of trade. Thus, I do not consider *Telectronics* a guiding precedent.

Nevertheless, on the basis of *West Allis*, as cursory as its exposition of the question is, I conclude that the allegations that the defendants have violated section 1320a–7b and chapter 118E, section 21B must be stricken from Counts II, III, and IV of the complaint. As noted above, Action does not seem to contest this point.

### b. *Massachusetts Consumer Protection Act*

■ Action also asserts violations of the anti-fraud statutes as bases for claims under the Massachusetts Consumer Protection Act in Counts VIII, IX, X, and XIII. The defendants move to strike these allegations as well, arguing that judicial interpretations of the Consumer Protection Act must follow those of the federal antitrust laws. The defendants arrive at this conclusion by applying the transitive property of law. To wit, the Massachusetts Consumer Protection Act provides that courts shall be guided in their interpretation of unfair methods of competition by the Massachusetts Antitrust Act. *See* Mass.Gen.Laws Ann. ch. 93A, § 11 (West 1992). The Antitrust Act in turn is supposed to be "construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable." Mass. Gen.Laws Ann. ch. 93, § 1. Therefore, the phrase "unfair methods of competition" in the Consumer Protection Act means whatever it does under federal antitrust law. *See* Memorandum of Defendants AtlantiCare Health Services, Inc. and AtlantiCare Medical Center, Inc. in Reply to "Plaintiff's Opposition to Defendants' Motions to Dismiss the Tying Claims and the Medicare and Medicaid Fraud Claims of Plaintiff's Complaint" at 3–4. In other words, because I have ruled that violations of the anti-fraud statutes are not cognizable bases for injunctive relief under the Sherman Act, I should find that alleged violations of those statutes are not a basis for relief under the Consumer Protection Act either.

Action's response is three-pronged. First, it argues that the violations of the anti-fraud statutes "are not asserted as a basis for a private cause of action by Plaintiff, but only serve as part of the overall specification of

---

7. The Court of Appeals noted, however, that "[t]o the extent West Allis has demonstrated a viable claim under the Sherman Act [citation omitted] *independent of its claim under the Medicare fraud provisions* [citation omitted] ..., the Clayton Act, 15 U.S.C. § 26, expressly provides the court with the statutory authority to enjoin the criminal activity complained of." *Id.* at 257 (footnote omitted) (emphasis added).

the conduct which provides plaintiff with a cause of action under M.G.L. c. 93A." Memorandum of Plaintiff, Action Ambulance Service, Inc., in Opposition to the Motions of Defendants to Dismiss the Tying Claims and Alleged Medicare and Medicaid Fraud Claims of the Complaint and the Motions of Defendants to Strike Immaterial and Redundant Allegations [hereinafter "Memorandum of Plaintiff"] at 14. Second, the underlying acts alleged by Action fall within the judicial definition of unfair practices as set forth in the case of *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 407 N.E.2d 297 (1980).[8] *See* Memorandum of Plaintiff at 10. Third, the Consumer Protection Act has been interpreted to make unlawful practices which violate existing statutes meant to protect the public health, safety, or welfare, and the anti-fraud statutes are such statutes. *See id.* at 10–13.

Action's first and second arguments do not directly address the issue. While the underlying conduct alleged to violate the anti-fraud statutes may properly be pled as the basis for a claim under the Consumer Protection Act, the defendants' objection is to the form of the allegation (that is, to Action's assertion that the underlying conduct violates criminal anti-fraud statutes). Action's third argument, however, is more to the point.

Under section 2(c) of chapter 93A, the Massachusetts Attorney General is empowered to "make rules and regulations interpreting the provisions of subsection 2(a)," which is the section of the Consumer Protection Act prohibiting unfair methods of competition. Pursuant to section 2(c), the Attorney General has promulgated regulation 3.16(3), which makes an act a violation of section 2(a) if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection...."[9] Mass. Regs. Code tit. 940, § 3.16(3) (1986). As Action notes, the state anti-fraud statute clearly fits this description. *See* Memorandum of Plaintiff at 11–13.

Nevertheless, it is unclear that in promulgating regulation 3.16(3) the Massachusetts Attorney General meant to give competing businesses a right to sue for a violation of a law intended to protect consumers, especially where that law provides criminal penalties.[10]

8. Section 2(b) of the Consumer Protection Act states that

> [i]t is the intent of the legislature that in construing paragraph (a) of this section ... the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

Mass.Gen.Laws Ann. ch. 93A, § 2(b) (West 1984). Section 5(a)(1) of the FTC Act provides that "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful." 15 U.S.C. § 45(a)(1). Therefore, in formulating its definition, the *Purity Supreme* court relied upon the FTC definition of unfair practices: 1) within the "penumbra of some common-law, statutory, or other established concept of unfairness;" 2) "immoral, unethical, oppressive, or unscrupulous;" or 3) causing "substantial injury to consumers (or competitors or other businessmen)." 380 Mass. at 777 (internal quotation marks omitted) (quoting 29 Fed.Reg. 8355 (1964)). It seems clear that the first prong of the FTC definition intends to include criminal statutes among those statutes from which concepts of unfairness may be drawn. *See, e.g., FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 243, 92 S.Ct.

898, 904, 31 L.Ed.2d 170 (1972); *Commonwealth v. DeCotis*, 366 Mass. 234, 241, 316 N.E.2d 748 (1974) ("Unfairness under the [FTC] act has not been limited to practices forbidden at common law or by criminal statute.") (citations omitted) (cited in *Chroniak and Pugliese v. Golden Investment Corp.*, 983 F.2d 1140, 1147 (1st Cir.1993)). However, even if a violation of a criminal statute may properly be alleged as a basis for a violation of section 5(a)(1) of the FTC Act, a subject upon which this court expresses no opinion, that fact would not advance Action's argument. Section 5(a)(1) is enforced by the FTC. It provides no private right of action. *See, e.g., Baum v. Great Western Cities, Inc. of New Mexico*, 703 F.2d 1197, 1209 (10th Cir.1983). Therefore, no parallel may be drawn between section 5(a)(1) and the Massachusetts Consumer Protection Act on the question before me.

9. Action's brief does not address the implications of the fact that one of the anti-fraud statutes, 42 U.S.C. section 1320a–7b, is a federal rather than state statute.

10. The regulation states on its face that it is aimed at laws "intended to provide the consumers of this Commonwealth protection." Moreover, it seems to have been applied mostly, if not

However, that question need not be resolved today. Regulation 3.16 explicitly states that it is not to be construed to "limit[ ] the scope of any other rule, regulation or statute. . . ." Therefore, I may, I believe, safely assume that even if in this case regulation 3.16 were in conflict with that portion of the Consumer Protection Act providing that courts shall be guided in their interpretation of unfair methods of competition by the Massachusetts Antitrust Act and federal antitrust statutes, the latter provision should prevail.

It is not intuitively obvious that allowing a criminal anti-fraud statute to serve as the basis for a claim under a state unfair practices act while disallowing its use as the premise for a claim under the Sherman Act would produce undesirable anomalies. But the intention of the Massachusetts legislature, as evinced by the language quoted above, seems to have been to harmonize state and federal treatment of business practices of the type complained of by Action. To allow Action to assert violations of the anti-fraud statutes as bases for liability under the Consumer Protection Act would be to allow an end run around the entire implied right of action inquiry. *See State Medical Oxygen & Supply, Inc. v. American Medical Oxygen Co.,* 230 Mont. 456, 459, 750 P.2d 1085, 1087 (1988) (holding that the precursor federal anti-fraud statute, 42 U.S.C. section 1395nn, could not be asserted as the basis for a claim under a state consumer protection statute because section 1395nn "was enacted for the benefit of recipients of medical care benefits, not for the benefit of a health care provider"). Therefore, I hold that the allegations that the defendants have violated 42 U.S.C. section 1320a–7b and Mass.Gen.L. ch. 118E, section 21B must be stricken from Counts VIII, IX, and X. Count XIII is dismissed.

3. *Noerr–Pennington Doctrine*

 In paragraph 35 of its complaint, Action alleges that AHS and AMC have succeeded in manipulating and influencing the City of Lynn to enter into exclusive use

agreements with the Limited Partnership and/or Life–Line. The defendants contend that this allegation, even if true, alleges activity protected under the *Noerr–Pennington* doctrine. According to that doctrine, "bona fide efforts to obtain or influence legislative, executive, judicial or administrative actions are immune from antitrust liability," even if those efforts are undertaken with the intent of stifling competition. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1251 (9th Cir.1982) (citation omitted), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). Action has not contended that the defendants' efforts to influence the City of Lynn were anything other than genuine.

Action attempts to avoid the effect of the *Noerr–Pennington* doctrine by arguing that it is "challenging defendants' entire course of conduct which allegedly resulted in the various violations of federal and state laws, which was not intended to influence government action and which does not enjoy immunity even if some of the defendants' conduct involved protected political activity." Memorandum of Plaintiff at 18 (footnote omitted). Action is correct that all of the defendants' allegedly unlawful activity is not immunized by the fact that their petitioning of the City is protected; however, that principle does not prevent the immunization of the petitioning activity itself. The *Clipper Exxpress* court explicitly held that *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), provides immunity for the narrow petitioning activity, so long as it is bona fide. 690 F.2d at 1264–65. Hence, the defendants' attempts to obtain the desired executive action from the City of Lynn are protected and paragraph 35 of the complaint must be stricken.

4. *Statute of Limitations*

Action has conceded that a four year statute of limitations applies to the allegations contained in its complaint and acknowledges

exclusively, in that context. *See, e.g., Calimlim v. Foreign Car Center, Inc.,* 392 Mass. 228, 235, 467 N.E.2d 443 (1984) (suit by customers against dealership premised on violations of statutes requiring warranties of merchantability and fit-

ness); *Piccuirro v. Gaitenby,* 20 Mass.App.Ct. 286, 480 N.E.2d 30 (1985) (suit by homeowners against real estate broker premised on violations of state environmental code and conflict of interest statute).

that it does not seek to recover damages for conduct prior to May 11, 1988. *See* Memorandum of Plaintiff at 18.

### CONCLUSION

For the foregoing reasons, the motion of the defendants to dismiss Counts I and VII is denied. Defendants' motion to strike the allegations that they have violated Mass. Gen.L. ch. 118E, section 21B and 42 U.S.C. section 1320a–7b is granted. Count XIII is dismissed. The motion to strike paragraph 35 is granted.

SO ORDERED.